**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James BUSHERT, Defendant–Appellant.**

**No. 91–3797.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 4, 1993.

---

Ronald J. Marzullo, St. Petersburg, FL, for defendant-appellant.

Walter E. Furr, Tamra Phipps and David P. Rhodes, Asst. U.S. Attys., Tampa, FL, for plaintiff-appellee.

Before KRAVITCH and BIRCH, Circuit Judges, and CLARK, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The validity of a waiver of the right to appeal a sentence, included in a plea agreement, is the primary issue in this case. Appellant James Bushert also appeals various other sentencing issues and the denial of his motion to withdraw his guilty plea. The government contends that the appeal as to his sentence should be denied because Bushert's plea agreement included a waiver of his right to appeal his sentence. We hold that sentence appeal waivers, made knowingly and voluntarily, are enforceable. Nevertheless, we consider the merits of the sentencing claims in this case because we conclude that Bushert's waiver was not knowingly and voluntarily made.

I.

One of Bushert's co-defendants, Frederick Albury, headed a cocaine distribution organization in Tampa. Albury was unable to contact his regular supplier of cocaine, Grillo. Knowing that Bushert was familiar with both Grillo and Grillo's source of cocaine, Albury approached Bushert in the hope that Bushert could obtain cocaine for Albury. Although Bushert's attempts to locate cocaine were unsuccessful, Albury was able to get thirty kilograms of cocaine from another source and paid Bushert for his efforts. Bushert knew that most of the cocaine Albury obtained was cooked into crack cocaine.

A grand jury in Florida returned an indictment against Bushert and five co-defendants charging them with conspiracy to possess with intent to distribute cocaine and possession with intent to distribute crack cocaine. The defendants also were charged with operating an establishment used to manufacture crack cocaine. The defendants' motions to suppress evidence that had been obtained through electronic surveillance were denied. At approximately the same time, all defendants entered into plea negotiations with the government. Bushert's co-defendants reached plea agreements with the government that reserved the right to appeal the denial of their motions to suppress.[1] Bushert's negotiations with the government became protracted, however, because the government believed that Bushert was not being completely truthful.

Eventually, Bushert reached an agreement with the government. That agreement stated that Bushert would plead guilty to Count One of a Superseding Information, charging him with conspiracy to possess with intent to distribute 30 kilograms of cocaine. Bushert agreed to cooperate with the government and the government agreed to "consider" whether such cooperation qualified as substantial assistance under section 5K1.1 of the Sentencing Guidelines.[2] The plea agreement stated that the decision as to whether or not the government would file a 5K1.1 motion rested solely with the government. Bushert agreed that "he cannot and will not challenge that decision, whether by appeal, collateral attack or otherwise."

The plea agreement also included a general appeal waiver provision. This provision read that the "[d]efendant knowingly and voluntarily agrees to waive his right to appeal or contest, directly or collaterally, his sentence on any ground, unless the Court should impose a sentence in excess of the statutory maximum or otherwise impose a sentence in violation of law apart from the sentencing guidelines."[3]

---

1. These defendants did appeal and a panel of this court affirmed the district court's denial without opinion. *United States v. Albury*, 949 F.2d 1161 (11th Cir.1991).

2. Section 5K1.1 of the Sentencing Guidelines reads, in part, that "[u]pon a motion of the government stating that the defendant has pro-

vided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

3. R1–193–4.

At Bushert's re-arraignment, the district court conducted a colloquy pursuant to Fed. R.Crim.P. 11. The court told Bushert that it needed to know if he made his plea "freely and voluntarily, without threats, force or promise except the promises contained in the four corners of this plea agreement.... If I ask you any question you don't understand, stop me and I'll explain to you."[4] Throughout the colloquy, the court elicited answers from Bushert that he was not under the influence of any drugs, had never been treated for a mental illness, knew where he was and knew to what charge he was pleading guilty.[5] Bushert testified that no promises were made to him other than the promises recited in the plea agreement.[6] The court informed Bushert of his various rights, including his right to a jury trial and the right against self-incrimination. The court also discussed appeals.

> THE COURT: Do you understand that you're losing the right to appeal regarding the *charges* in this case, however, you do retain the right to question whether you're entering this plea freely and voluntarily, whether the Court has jurisdiction to take your plea. But other than that you're losing your appeal right, do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.[7]

The court also discussed appeals in the context of the Sentencing Guidelines.

> THE COURT: Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that the Court imposes, do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.[8]

The court then questioned Bushert's attorney concerning various issues. Finally, the court specifically found that Bushert understood what he was doing and that the plea was "not produced by risk, force or promise except those promises dictated into the record in the plea agreement."[9] After finding that the plea was entered freely and voluntarily, the court accepted Bushert's guilty plea.[10]

Two months later, Bushert filed a motion to withdraw his plea under Fed.R.Crim.P. 32(d), alleging that the government had promised orally that he would get the "same deal" as his co-defendants. The co-defendants retained the right to appeal the denial of the suppression motion; the plea agreement Bushert signed purports to waive all appellate rights. A magistrate judge reviewed this claim and made several findings of fact. The magistrate found that immediately prior to his re-arraignment, Bushert reviewed his plea agreement but that he did not have time to compare it with his co-defendants' agreements.[11] The magistrate concluded that an evidentiary hearing was not required because Bushert provided no affidavits,[12] and because at the re-arraignment, Bushert had indicated that there were no promises outside the plea agreement. The magistrate recommended that Bushert's motion to withdraw his guilty plea be denied. Although Bushert contested this report, the district court adopted the magistrate's report and recommendation.

At the sentencing hearing, Bushert's new counsel asserted that the government had acted in bad faith by refusing to file a 5K1.1 substantial assistance departure motion. Although Bushert withdrew his request for an evidentiary hearing on this matter, he notes that he did not waive the bad faith argument. The district court also considered and resolved Bushert's objections to the PSI and heard testimony on the government's proposed obstruction of justice enhancement. The court gave Bushert an obstruction of justice enhancement and an acceptance of responsibility downward departure. The

---

**4.** R7 at 5.

**5.** R7 at 12.

**6.** R7 at 15.

**7.** R7 at 16 (emphasis added).

**8.** R7 at 18.

**9.** R7 at 21.

**10.** R7 at 22.

**11.** R1 Supp–242–4.

**12.** Bushert claims that affidavits were filed after the magistrate's recommendation was submitted to the district court.

court sentenced Bushert to 151 months of imprisonment, followed by 5 years of supervised release.

## II.

### A.

Bushert raises six issues on appeal. Before addressing these issues, we first consider the government's claim that Bushert's purported waiver of his right to appeal his sentence ("sentence appeal waiver"), as stated in his plea agreement, prevents him from contesting his sentence. This is an issue of first impression in this circuit.

There is no question that a defendant who enters a guilty plea waives numerous constitutional rights. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Those rights include the right to a jury trial, the right to call witnesses, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination. *Id.; see also Brady v. United States,* 397 U.S. 742, 747–48, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). In fact, guilty pleas have been described as "perhaps the supreme instance of waiver known to our system of justice, one by which all ... trial rights and safeguards are voluntarily foregone." *United States v. Dayton,* 604 F.2d 931, 935 (5th Cir.1979) (en banc).[13]

Plea bargains serve many significant and valid purposes. For example, they save the government time and money.

> [W]hen the state enters a plea bargain with a criminal defendant, it receives immediate and tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources. Also, the defendant's agreement to plead to some crime tends to ensure some satisfaction of the public's interest in the prosecution of crime and confirms that the prosecutor's charges have a basis in fact.

*Newton v. Rumery,* 480 U.S. 386, 393 n. 3, 107 S.Ct. 1187, 1192 n. 3, 94 L.Ed.2d 405 (1987) (citations omitted). Not only are such bargained guilty pleas and concomitant waiv-

ers permissible, the Supreme Court has stated that they are "important components of this country's criminal justice system." *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977).

By its terms, the appeal waiver in this case only applied to Bushert's sentence. Accordingly, an appeal going to the heart of the plea—such as the one Bushert makes in his appeal from the denial of his Rule 32(d) motion that his plea was not made voluntarily—would not be affected by the waiver. The waiver of the right to appeal one's sentence implicates a different set of concerns than a plea of guilty, which waives the bundle of constitutional rights discussed above.

■ There is no constitutional right to appeal. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). The right to appeal is purely statutory. *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977); *see* 18 U.S.C. § 3742; 28 U.S.C. § 1291. Before the passage of the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.,* defendants appealed their sentences pursuant to 28 U.S.C. § 1291. If, however, the district court imposed a sentence within the statutory limits, it was "generally not subject to review." *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). When Congress passed the Sentencing Reform Act, it greatly expanded a defendant's right to obtain appellate review of his sentence. Under the authority of 18 U.S.C. § 3742(a), courts of appeals may now review certain sentences, including those "imposed in violation of law ... [and those] imposed as a result of an incorrect application of the sentencing guidelines." It is against the backdrop of the Sentencing Reform Act system that we approach this case.

At least five other circuits have addressed this issue. All have enforced sentence appeal waivers. *See United States v. Melancon,* 972 F.2d 566, 568 (5th Cir.1992); *United States v. Rivera,* 971 F.2d 876, 896 (2d Cir.1992); *United States v. Rutan,* 956 F.2d 827, 829 (8th Cir.1992); *United States v. Navarro-Botello,* 912 F.2d 318, 321 (9th Cir.1990);

---

**13.** The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), adopted as circuit precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*United States v. Wiggins*, 905 F.2d 51, 53 (4th Cir.1990). The Fourth Circuit initially addressed waivers in a context similar to the instant case in *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir.1989) (en banc). In *Clark*, a Bail Reform Act case, the court reasoned that "[i]f a defendant can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial, surely they are not precluded from waiving procedural rights granted by statute." The next year, the Fourth Circuit was faced with a case also comparable to the one at bar. *See Wiggins*, 905 F.2d at 52. Working from *Clark*, the *Wiggins* court stated "that a defendant who pleads guilty, and expressly waives the statutory right to raise objections to a sentence, may not then seek to appeal the very sentence which itself was part of the agreement." *Id.* at 53. The *Wiggins* court held that knowingly and voluntarily made waivers should be given full effect. *Id.* at 54.

In *Wiggins*, the district court had gone to great lengths during the Fed.R.Crim.P. 11 hearing to verify that the defendant understood the meaning of the waiver he was about to sign. *Id.* "On two separate occasions during the plea hearing, the district court reminded ... [the defendant] that he was waiving his right to appeal his sentence even though its exact length was as yet undetermined." *Id.* at 53. The *Wiggins* defendant stated that he had discussed the situation with his attorney and understood how the Sentencing Guidelines might be applied to his case. *Id.* at 54.

The Fourth Circuit refined its jurisprudence in this area in *United States v. Wessells*, 936 F.2d 165, 168 (4th Cir.1991), and in *United States v. Marin*, 961 F.2d 493 (4th Cir.1992). The law of the Fourth Circuit remains that sentence appeal waivers made knowingly and voluntarily will be enforced. The *Marin* court held, however, that "a waiver is not knowingly or voluntarily made if the district court fails to specifically question the defendant concerning the waiver provision of the plea agreement during the Rule 11 colloquy and the record indicates that the defendant did not otherwise understand the full significance of the waiver." *Marin*, 961 F.2d at 496 (*citing Wessells*, 936 F.2d at 168).

The *Marin* court went on to state that "a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." *Id.*

The Ninth Circuit also has enforced sentence appeal waivers. In *Navarro–Botello*, the defendant agreed to waive his right to appeal his sentence if the sentence imposed was within the Guidelines range calculated by the parties. 912 F.2d at 319–20. The parties calculated a range of 15–21 months and the district court sentenced the defendant to 21 months. *Id.* at 320. The defendant appealed, asserting that his plea was not voluntary and that sentence appeal waivers should not be enforced.

The Ninth Circuit rejected the argument made by the defendant that his waiver was involuntary because it gave up "unknown" appeal rights. *Id.* The *Navarro–Botello* court analogized this situation to a case in which the Supreme Court allowed an individual to waive the right to file a 42 U.S.C. § 1983 action in return for the prosecutor dismissing pending criminal charges. *Id.* (citing *Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987)). In *Newton*, the Supreme Court had held that the litigant gave up a somewhat unknown right by agreeing not to file a § 1983 action and that that action reflected a "highly rational judgment." 480 U.S. at 394, 107 S.Ct. at 1193. Relying on *Newton*, the Ninth Circuit concluded that when the defendant signed the sentence appeal waiver, he "knew he was giving up possible appeals, even if he did not know exactly what the nature of those appeals might be." *Navarro–Botello*, 912 F.2d at 320.

Adopting the rationale of *Newton* and *Wiggins*, the *Navarro–Botello* court held that it would enforce voluntary and intelligent sentence appeal waivers. 912 F.2d at 321. The court also concluded that public policy strongly supported sentence appeal waivers. *Id.* at 321–22. The Ninth Circuit added its own exception, however, stating that a waiver would not prevent an appeal if the "sentence imposed is not in accordance with the negoti-

ated agreement." *Id.* The *Navarro–Botello* defendant was sentenced to a term within the range contemplated by the negotiated plea agreement and the Ninth Circuit affirmed the district court. *Id.*

In *United States v. Bolinger,* 940 F.2d 478 (9th Cir.1991), the Ninth Circuit construed *Navarro–Botello* narrowly. The plea agreement in *Bolinger* contained a sentence appeal waiver and a provision that stated that the defendant would not be sentenced to more than 36 months. *Id.* at 479. The district court sentenced the defendant to 36 months of imprisonment. The defendant appealed, claiming the district court used an improper offense level and improperly departed from the Guidelines. The defendant argued that because his plea agreement specified that he was to be sentenced under the Sentencing Guidelines,[14] "the alleged misapplication of the guidelines renders the sentence outside the negotiated agreement, thereby providing a basis for appeal under the *Navarro–Botello* exception." 940 F.2d at 480. The court rejected this argument, asserting that such an interpretation would contravene the plain meaning of the plea agreement and would make sentence appeal waivers meaningless. *Id.* The court held that knowing and voluntary sentence appeal waivers would be enforced. *Id.*

Recently, another panel of the Ninth Circuit, diverging from the Fourth Circuit, refused to require a Rule 11 colloquy in order to enforce a waiver of appeal rights. *United States v. DeSantiago–Martinez,* 980 F.2d 582 (9th Cir.1992). The court found that the text of the sentence appeal waiver in the plea agreement was simple and clear. The agreement had been read to the defendant in Spanish, his primary language, and he had discussed it with his attorney. As such, the Ninth Circuit concluded that the sentence appeal waiver satisfied the knowing and voluntary requirement. *Id.* at 583.

On appeal, the defendant had objected because the district court did not address the sentence appeal waiver at the Rule 11 hearing. The *DeSantiago–Martinez* court rejected that argument. 980 F.2d at 583. "In our view, a Rule 11 colloquy on the waiver of the right to appeal is not a prerequisite to a finding that the waiver is valid; rather a finding that the waiver is knowing and voluntary is sufficient." *Id.* The dissent in *DeSantiago–Martinez* opined that the majority had allowed the district court to "shirk its duties under Rule 11 ... when a defendant's waiver of the right to appeal a sentence is contained in a plea agreement.... The majority reduces the analysis of whether or not a waiver of the right to appeal is knowing and voluntary to a cursory look at the plea agreement itself." *Id.*

The Eighth Circuit, when confronted with this issue, reviewed the importance of plea agreements to such concerns as the finality of judgments and sentences. *Rutan,* 956 F.2d at 829. "We also note that plea agreements are of value to the accused in order to gain concessions from the government. We feel constrained not to interfere with a defendant's right to enter into these agreements." *Id.* Thus, the court recognized implicitly that the government may be inclined to offer the defendant a more attractive plea agreement if the government knows that it will not have to spend the time and resources fighting an appeal of the conviction *or* fighting an appeal of the sentence.

The *Rutan* court cited the Fourth Circuit line of cases and concluded that if a sentence appeal waiver is made knowingly and voluntarily, it is enforceable. *Id.*[15] The court also followed *Navarro–Botello* in holding that a sentence appeal waiver "would not prevent an appeal where the sentence imposed is not in accordance with the negotiated agreement." *Id.* at 830. In deciding to enforce sentence appeal waivers, the Eighth Circuit rejected the argument that sentence appeal waivers should not be enforced because a "defendant cannot knowingly and voluntarily

---

**14.** Bushert's plea agreement also contains such a provision. R7 at 5.

**15.** The sentence appeal waiver in *Rutan* only prevented appeals under 18 U.S.C. § 3742(a). As such, the court noted that 28 U.S.C. § 2255 habeas corpus relief was still available to the *Rutan* defendant. A plain reading of the sentence appeal waiver in the instant case reveals that Bushert's waiver, if enforced, would prohibit habeas relief as to his sentence as well.

waive an unknown right." *Id.* The court deemed this argument baseless, stating that such an accusation could just as easily be brought against guilty pleas generally because by pleading guilty a defendant waives his right to a trial. "An accused does not know that the government will be able to prove its case, how witnesses will testify, or that he will be able to competently represent himself, yet he may freely waive his right to jury trial, to confront witnesses, and to counsel." *Id.* at 830 n. 2. The *Rutan* court stated that it was enough for the defendant to know he had a right to appeal and to understand that he was waiving that right. *Id.* at 830.

The final court to address sentence appeal waivers was the Fifth Circuit. *Melancon,* 972 F.2d at 567. The *Melancon* court followed unpublished Fifth Circuit precedent that enforced an "informed and voluntary" sentence appeal waiver. *Id.* (citing *United States v. Sierra,* No. 91–4342, [951 F.2d 345 (Table),] published as an attachment to *Melancon,* 972 F.2d at 568–70). The Fifth Circuit reaffirmed its unpublished precedent and dismissed the appeal.

We agree with the basic reasoning of our sister circuits that sentence appeal waivers may be enforced. However, just as a guilty plea must be made knowingly and voluntarily to be effective, *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969), so must a sentence appeal waiver.[16] As the Eighth Circuit noted in *Rutan,* 956 F.2d at 830, one of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a "right to appeal his sentence and that he was giving up that right." We hold, therefore, that in most circumstances a defendant's knowing and voluntary waiver of the right to appeal his sentence will be enforced by this circuit.

**B.**

A defendant's waiver of the right to appeal his sentence does not mean, however, that appellate review is completely unavailable.[17] Even a defendant who has executed an effective waiver does not "subject himself to being sentenced entirely at the whim of the district court." *Id.*[18] Our endorsement

16. The "knowing" component is consistent with binding precedent in this circuit which holds that in order for a waiver to be valid, it must be informed. *Arrastia v. United States,* 455 F.2d 736, 739 (5th Cir.1972) ("A decision to waive the direct appeal must be an informed one."). One example of a waiver that is neither informed nor knowing could be if the defendant did not speak English and he was not afforded competent translation services for both the plea agreement itself and the Rule 11 hearing.

17. Even judicially enforced, knowing and voluntary sentence appeal waivers as broad as Bushert's—which include a .waiver of collateral appeal of his sentence—would not prevent a collateral § 2255 action concerning certain subjects. *See United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir.1993) (allowing, despite the existence of a sentence appeal waiver, § 2255 proceedings "such as a claim of ineffective assistance of counsel or involuntariness of waiver.") (citations omitted).

18. For example, there are certain fundamental and immutable legal landmarks within which the district court must operate regardless of the existence of sentence appeal waivers. As the *Marin* court wrote, "a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitu-

tionally impermissible factor such as race." *Id.* It is both axiomatic and jurisdictional that a court of the United States may not impose a penalty for a crime beyond that which is authorized by statute. *See United States v. White,* 980 F.2d 1400, 1401 (11th Cir.1993) (preventing imposition of both fine and imprisonment for a conviction of criminal contempt because statute only provided for one or the other, despite provision of Sentencing Guidelines encouraging fines). Key concepts of equal protection might also defeat the enforcement of a waiver if the defendant was sentenced " ' "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." ' " *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (*Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978) (*Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962))) (prohibiting the government from deciding to prosecute based on such unjustifiable factors). Similarly, basic tenets of the law governing plea bargains might persuade a court to adopt the restriction on sentence appeal waivers espoused by the Ninth Circuit in *Navarro–Botello* such that a waiver would not be enforced if the "sentence imposed is not in accordance with the negotiated agreement." *Navarro–Botello,* 912 F.2d at 321; *see Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971).

of sentence appeal waivers is secured by the underpinning that for a waiver to be effective it must be knowing and voluntary. *Marin,* 961 F.2d at 496; *see also supra* note 14. Combining that underpinning with an understanding of Rule 11 leads us to conclude that in most circumstances, for a sentence appeal waiver to be knowing and voluntary, the district court must have specifically discussed the sentence appeal waiver with the defendant during the Rule 11 hearing.

District court observance of Rule 11 is vital to the effective functioning of our criminal justice system. Compliance with Rule 11 is designed to ensure that a "plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). The former Fifth Circuit, sitting *en banc,* identified the core concerns of Rule 11 as "absence of coercion, understanding of the accusation, and knowledge of the direct consequences of the plea." *Dayton,* 604 F.2d at 939. Deviations from these core concerns justify judicial intervention.

This court recently reaffirmed the general propositions of *Dayton.* *United States v. Zickert,* 955 F.2d 665, 667–68 (11th Cir.1992). In *Zickert,* we allowed a defendant to replead based on the district court's failure to inform him that he could not withdraw his guilty plea if the court declined to impose the sentence recommended in the plea agreement. The district court allowed Zickert to retain the mistaken belief that in return for his guilty plea he would receive a fixed sentence.

The *Zickert* court identified three primary objectives of Rule 11. "First, a guilty plea must be free from coercion. Second, the accused must understand the nature of the charges against him. Finally, the defendant must be aware of the direct consequences of his guilty plea." *Id.* at 668. The *Zickert* court held that, on the facts before it, the district court deviated from the requirements of Rule 11 in such a way that the core concerns were not satisfied and that the defendant was entitled to replead. *Id.* at 667–68.

We conclude that the defendant's knowledge and understanding of the sentence appeal waiver is one of the components that constitutes the "core concern" of the defendant's right to "be aware of the direct consequences of his guilty plea." *Id.* at 668. We agree with the *Marin* court's holding that "a waiver is not knowingly or voluntarily made if the district court fails to specifically question the defendant concerning the waiver provision of the plea agreement during the Rule 11 colloquy and the record indicates that the defendant did not otherwise understand the full significance of the waiver." 961 F.2d at 496 (citation omitted).[19]

■ In order to prevail in its argument that this court should enforce a sentence appeal waiver, the government need only demonstrate *one* of the two *Marin* items. The government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.[20]

We do not decide these matters today, however, because they are not presented in the instant case.

**19.** The *Marin* court's framing of this requirement is consistent with the Supreme Court's statement in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), that the determination of whether there has been an intelligent waiver depends "in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."
This is also consistent with the Fifth Circuit's holding in *United States v. Baty,* 980 F.2d 977,

979 (5th Cir.1992). The *Baty* court stated "[w]e think that a defendant's waiver of her right to appeal deserves and, indeed requires the special attention of the district court.... It is up to the district court to insure that the defendant fully understands her right to appeal and the consequences of waiving that right." *Id.*

**20.** We are not conflating statutory rights and constitutional rights here. We reiterate that the right to appeal is solely a statutory right. That recognition does not make any difference in this context, however, because the waiver of a right—whether constitutional or statutory—must be knowingly and voluntarily made. *See, e.g., Gil-*

■ We reject the view of the *DeSantia-go–Martinez* court that an examination of the text of the plea agreement is sufficient to find the waiver knowing and voluntary. 980 F.2d at 583. Rather, we agree with the *DeSantiago–Martinez* dissent when it stated "it is incumbent upon the judge to canvass the defendant in a manner that ensures that the defendant made a voluntary decision based on an understanding of both the nature of the charges against him and the *statutory* and constitutional rights he is relinquishing." *Id.* (emphasis added). This is not to say that during a Rule 11 colloquy, the district court must question the defendant about every aspect of the plea agreement, but only those involving relinquishment of rights. The fact that the defendant is giving up a right when he agrees to a sentence appeal waiver is what distinguishes the district court's responsibility with respect to such waivers from its responsibility with respect to other various and sundry provisions of a plea agreement such as a defendant's promise to cooperate with the government.

Without a manifestly clear indication in the record that the defendant otherwise understood the full significance of the sentence appeal waiver, a lack of sufficient inquiry by the district court during the Rule 11 hearing will be error. Therefore, in most circumstances, for a sentence appeal waiver to be knowing and voluntary, the district court must have engaged the defendant about the sentence appeal waiver during the Rule 11 hearing.

III.

A.

With that foundation laid, we turn to an examination of the case at bar in order to determine whether to enforce Bushert's purported sentence appeal waiver. The voluntariness of a guilty plea is a question of law reviewed *de novo*. *Marshall v. Lonberger*, 459 U.S. 422, 431, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983). Similarly, the determination of whether a defendant effectively—that is knowingly and voluntarily—waived his right to appeal his sentence is a question of law that this court reviews *de novo*. *Marin*, 961 F.2d at 496; *Bolinger*, 940 F.2d at 479.

■ In this case, the district court did not specifically address the issue of the sentence appeal waiver in the Rule 11 hearing. The district court did inform Bushert that he was waiving his right to appeal the *charges* against him. In contrast, during the Rule 11 hearing, the court also informed Bushert that he might have the right to appeal his *sentence* under some circumstances: "Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that the Court imposes, do you understand that?" [21]

The district court's language here was confusing. It is true that even under the terms of the sentence appeal waiver, Bushert could appeal his sentence under some circumstances. The district court's statement, however, did not clearly convey to Bushert that he was giving up his right to appeal under

more *v. Utah*, 429 U.S. 1012, 1014–15, 97 S.Ct. 436, 438, 50 L.Ed.2d 632 (1976) (Burger, C.J., concurring in order terminating stay of execution) (agreeing that "next friend" standing not available because individual sentenced to death "knowingly and intelligently, with full knowledge of his right to seek an appeal[,] ... waived that right"); *cf. Medina v. California*, —— U.S. ——, ——, 112 S.Ct. 2572, 2579, 120 L.Ed.2d 353 (1992) (applying "knowing and intelligent" standard to a discussion of the waiver of the right to a competency hearing); *United States v. Mendoza-Lopez*, 481 U.S. 828, 840, 107 S.Ct. 2148, 2156, 95 L.Ed.2d 772 (1987) (finding due process violation in use of deportation as element of criminal offense when immigration judge permitted waivers of the right to appeal that were not the result of "considered or intelligent" judgment by the aliens).

Moreover, the commonly understood meaning of "waiver" supports this view. *See Black's Law Dictionary* 1417 (5th Ed.1979). *Black's* defines "waiver" as the "intentional or voluntary relinquishment of a known right." *See also* Paul T. Wangerin, *"Plain Error" and "Fundamental Fairness": Toward a Definition of Exceptions to the Rules of Procedural Default*, 29 DePaul L.Rev. 753, 757–58 (1980) (noting, in an article discussing the "raise or forfeit" rule of appellate review, that waiver suggests an "intentional relinquishment of a known right," and contrasting forfeiture as occurring "either inadvertently or unintentionally").

**21.** R8–18–16.

*most* circumstances. The statement the district court made to Bushert could have been made—and indeed would have been more appropriate if it had been made—to a defendant who had not signed a sentence appeal waiver. Defendants who do not sign sentence appeal waivers at all may appeal under some circumstances; they may appeal under the circumstances provided for in 18 U.S.C. § 3742(a). The district court's generalization that the defendant could appeal his sentence under some circumstances was insufficient. It is not manifestly clear that Bushert understood he was waiving his appeal rights. Nor does a thorough review of the record yield any indication that Bushert otherwise understood the full significance of his sentence appeal waiver.

We conclude that the district court's Rule 11 colloquy was deficient for failure to discuss sufficiently with Bushert his sentence appeal waiver. We hold that that failure was error.

### B.

No court has explicitly discussed the rationale for determining the remedy the court should apply when a sentence appeal waiver is determined not to have been made knowingly and voluntarily.[22] The Fourth Circuit case of *Wessells,* however, is informative. In *Wessells,* the Fourth Circuit determined that there was no Rule 11 inquiry concerning the sentence appeal waiver and that the defendant did not "knowingly agree to an absolute waiver of all rights to appeal his sentencing." 936 F.2d at 168. The court then addressed the merits of the appeal in which the defendant had raised numerous issues concerning the Sentencing Guidelines. The Fifth Circuit followed this same path in *Baty.* 980 F.2d at 979.

■ Thus, it appears that the Fourth and Fifth Circuits' remedy for an unknowing and involuntary waiver is essentially severance. The improper part of the defendant's plea agreement—the unknowing and involuntary sentence appeal waiver—is severed or disre-

garded by the appellate court while the remainder of the plea agreement is enforced as written and the appeal goes forward. We agree with the remedy chosen by the other circuits.

By imposing the severance remedy, Bushert will get the benefit of the deal he thought he struck. Moreover, a severance remedy for an unknowing and involuntary sentence appeal waiver is not inconsistent with this court's precedent in *United States v. Zickert,* 955 F.2d 665 (11th Cir.1992). In *Zickert,* we permitted the defendant to replead because the district court erroneously allowed him to believe that one of the concessions offered in return for his guilty plea was a fixed sentence. Under these circumstances, the failure of the district court to inform Zickert that he was bound by the plea agreement even if the court rejected the recommended sentence affected the fundamental consideration underlying the defendant's guilty plea. The *only* remedy available was to allow the defendant to replead. *Id.* at 668.

Bushert's situation may be distinguished from that of the defendant in *Zickert.* Unlike *Zickert,* there is a remedy available in the instant case that is less drastic than allowing the defendant to replead yet will allow the defendant to receive the full benefit of his plea bargain as he understood it. Severing the appeal waiver would correct the only violation of a Rule 11 core concern in this case—that Bushert was not aware of the direct consequences of his guilty plea. In short, we believe that our Rule 11 jurisprudence must distinguish the concerns posed by an involuntary and unknowing guilty plea from those raise by an involuntary and unknowing sentence appeal waiver. In the latter case but not the former, severance is both practical and adequate to preserve the defendant's rights.

We understand that the government may have given Bushert a better deal because of the inclusion of the sentence appeal waiver

---

**22.** We express no opinion as to the appropriate remedy for other situations—such as the imposition of a sentence beyond that which is authorized by statute or the imposition of a sentence not in accordance with the negotiated agreement—that would cause this court to refuse to enforce a sentence appeal waiver.

than Bushert could have obtained without the sentence appeal waiver. *See, e.g., Rutan,* 956 F.2d at 829. Nevertheless, in this case the government will not be prejudiced by the court resolving the merits of Bushert's appeal. In fact, the government argued the substantive merits of Bushert's claims in addition to contending that the sentence appeal waiver should be enforced, thus implicitly acknowledging that severance was the appropriate remedy if this court invalidated the sentence appeal waiver.[23]

### IV.

We now consider the merits of Bushert's five claims of sentencing errors: that the district court erred (1) in calculating his base offense level; (2) in not finding him a minor or minimal participant under the Sentencing Guidelines; (3) in enhancing his sentence under the Sentencing Guidelines for obstruction of justice; (4) in not reducing his sentence because of his substantial assistance; and (5) in sentencing him to the same amount of time in prison as an "organizer" of the conspiracy.

■ None of these contentions are meritorious. First, appellant asserts that the district court made a mistake in attributing 30 kilograms of cocaine to his offense. But Bushert has not demonstrated, as he must to prevail, that the district court's factual findings with respect to the calculation of the base offense level were clearly erroneous. *United States v. Burton,* 933 F.2d 916, 917 (11th Cir.1991); *see also* U.S.S.G. § 2D1.4 (1991). Bushert's next contention, that the district court erred in not reducing his base offense level in consideration for his alleged minor or minimal role in the offense, also fails because he has not established that the district court's decision was clearly errone-

ous. *United States v. Alston,* 895 F.2d 1362, 1369 (11th Cir.1990) (upholding district court's refusal to grant minor or minimal participant status for person who facilitated contact between parties in drug transaction). Bushert's third claim, that he should not have received an enhancement for obstruction of justice, similarly is without merit, especially because the district court found that he lied during his plea negotiations and that these lies impeded the investigation of this offense. *See* U.S.S.G. § 3C1.1, application note 3(g) (1992) (obstruction enhancement appropriate when defendant provides "materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense").

■ Appellant objects to the district court's refusal to reduce his sentence in light of his alleged substantial assistance in accordance with his plea agreement.[24] He contends that the government acted in bad faith in declining to file the necessary U.S.S.G. § 5K1.1 substantial-assistance motion. In *Wade v. United States,* —— U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), the Supreme Court held that federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion if they find that the refusal was based on an unconstitutional motive. The Supreme Court specifically noted, however, that *Wade* did not involve a plea agreement:

> [Wade] does not claim that the Government-motion requirement is itself unconstitutional, or that the condition is superseded in this case by any agreement on the Government's behalf to file a substantial-assistance motion, *cf. Santobello v. New York,* 404 U.S. 257, 262–263, 92 S.Ct. 495,

---

**23.** It is conceivable that we would have allowed the defendant to replead had the government, in its initial brief, stated that it preferred to have the defendant replead instead of having the court sever the sentence appeal waiver, if the waiver was held to be invalid. In this way, the government could elect to protect its bargaining position more fully. *See, e.g., Rutan,* 956 F.2d at 829. The government made no such request. Accordingly, because it is not properly before us, we do not decide this question today.

**24.** The plea agreement provides that "[i]f [Bushert's] ... cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as 'substantial assistance' pursuant to 18 U.S.C. § 3553(e), Section 5K1.1 of the Sentencing Guidelines, and the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending a downward departure from the applicable guideline range." R1–193 at 2–3.

498–499, 30 L.Ed.2d 427 (1971); *United States v. Conner,* 930 F.2d 1073, 1075–1077 (CA4), *cert. denied,* 502 U.S. ——, 112 S.Ct. 420, 116 L.Ed.2d 440 (1991).

—— U.S. at ——, 112 S.Ct. at 1843. This case, unlike *Wade,* does involve a plea agreement. The circuits that have addressed the issue are split as to whether, when a plea agreement allows for a substantial-assistance motion contingent on the government's subjective evaluation of a defendant's effort to cooperate, the government's decision not to file a substantial-assistance motion is reviewable for bad faith or only for unconstitutional motives. *Compare United States v. Knights,* 968 F.2d 1483, 1487 (2d Cir.1992) (allowing review for bad faith as well as unconstitutional motives), *with United States v. Romsey,* 975 F.2d 556, 558 (8th Cir.1992) (allowing review only for unconstitutional motives). This court has not yet determined the extent of a district court's authority to review the government's refusal to file a substantial-assistance motion when a plea agreement is involved. In this case, however, we need not decide this issue because, although appellant initially requested an evidentiary hearing on his bad faith allegation, Bushert specifically withdrew this request in the midst of his sentencing hearing and thus failed to introduce evidence in support of his allegations.[25]

■ Finally, Bushert contends that the district court erred by sentencing him to a term in prison as long or longer than some of his allegedly more involved co-conspirators. Nevertheless, even Bushert acknowledges that there is precedent in this circuit that states that challenges to sentencing because a co-defendant received a less severe penalty are "frivolous." *United States v. Hendrieth,* 922 F.2d 748, 752 (11th Cir.1991). On this ground, Bushert's sentence will not be disturbed.

## V.

■ In addition to Bushert's sentencing claims, he also contends that he should have been allowed to withdraw his guilty plea pursuant to Fed.R.Crim.P. 32(d).[26] Rule 32(d), in pertinent part, states that "[i]f a motion for withdrawal of a plea of guilty … is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Although this portion of the rule is to be liberally construed, there is no absolute right to withdraw a guilty plea before sentence is imposed. *United States v. Buckles,* 843 F.2d 469, 471 (11th Cir.1988) (citations omitted). The decision to allow withdrawal is committed to the sound discretion of the trial court and may only be reversed if "arbitrary or unreasonable." *Id.* (citations omitted).

■ In his Rule 32(d) motion, Bushert contended primarily that his plea was not entered knowingly and voluntarily because he did not realize that his "plea agreement did not include a reservation of the right to appeal the Court's ruling on the legality of a wire tap." [27] Bushert claimed that the absence of this reservation of right was contrary to his agreement with the government to receive the "same deal" as his co-defendants whose plea agreements preserved the right to appeal the denial of their suppression motions. The district court, adopting the magistrate's report and recommendation, denied the Rule 32(d) motion.

Bushert's co-defendants exercised the reservation of right that Bushert tried to obtain through his motion to withdraw his plea. These co-defendants appealed the suppression order to the Eleventh Circuit. This court affirmed without opinion the district court's denial of the motions to suppress. *United States v. Albury,* 949 F.2d 1161 (11th Cir.1991). As such, the government persuasively argues that Bushert's claim is moot.

The Ninth Circuit addressed an analogous issue in *United States v. Schaff,* 948 F.2d

---

**25.** Moreover, the two police officers who interviewed Bushert testified at the sentencing hearing that Bushert was untruthful in four out of the five interviews they conducted. Appellant did not offer any evidence to undermine this testimony.

**26.** *See United States v. Lambey,* 974 F.2d 1389 (4th Cir.1992) (*en banc*) (allowing challenge to denial of Rule 32(d) motion despite defendant's waiver of right to appeal sentence).

**27.** R1Supp–204 at 2.

501, 506 (9th Cir.1991). In *Schaff,* the defendant appealed the propriety of a jury instruction given in his trial. The Ninth Circuit previously had upheld the relevant jury instruction in an appeal by Schaff's co-defendant. *Id.* The *Schaff* court rejected the defendant's claim by relying on law of the case. Noting that the doctrine of law of the case concerned " 'the continued application of a rule of law previously determined in the same case,' " the *Schaff* court then cited *United States v. Tierney,* 448 F.2d 37, 39 (9th Cir.1971), in which the court concluded that law of the case established on appeal by one defendant applied to the identical suppression issue raised in a separate appeal by a co-defendant convicted at the same trial. 948 F.2d at 506 (quoting *United States v. Maybusher,* 735 F.2d 366, 370 (9th Cir.1984)). The court stated further that law of the case is "applicable when the appeal of one co-defendant is decided prior to the appeal of the other co-defendant, if both were convicted at the same trial." *Id.* Therefore, the law of the case established by Schaff's co-defendant prevented Schaff from prevailing.

The analogy between *Schaff* and the instant case is strong. Bushert raised his objection to the evidence the district court refused to suppress by moving to adopt the motions made by his co-defendants.[28] Bushert wanted to withdraw his guilty plea so that he could appeal this denial of the suppression motion in the same manner that his co-defendants could appeal the denial. Had Bushert been given the opportunity to withdraw his plea so that he could then appeal the suppression, his appeal would have been unsuccessful. Although Bushert and his co-defendants were not convicted at the same trial, their joint motions for suppression were denied in the same proceeding and they then pled guilty. We therefore conclude that this objection is moot.

## VI.

Accordingly, we AFFIRM.

---

**28.** R1Supp–99 at 1.