[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-10667

_____

D. C. Docket No. 03-00243-CR-T-23-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MONKILE M. CLEMMONS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 26, 2007)

Before ANDERSON and MARCUS, Circuit Judges, and ALTONAGA,* District
Judge.

PER CURIAM:

_____

* Honorable Cecilia M. Altonaga, United States District Judge for the Southern District of
Florida, sitting by designation.

In this appeal we decide whether the district court abused its discretion in denying Monkile Clemmons's motion to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B).[1]  We conclude that it did not. Accordingly, we affirm the judgment of the district court.

I.

On February 19, 2003, a narcotics investigator employed by the Hillsborough County, Florida, Sheriff's Office obtained from a Florida circuit judge a search warrant authorizing the search of Clemmons's apartment.  The narcotics investigator stated in his supporting affidavit that he had information that a confidential informant had purchased, in a controlled buy, crack cocaine at Clemmons' apartment from a black male known as "Cowboy" sometime between January 15 and January 25, 2003.  Based on that transaction, the investigator stated that he believed crack cocaine was currently being kept at Clemmons' apartment, as of February 19, the date he applied for the warrant.  The warrant authorized law enforcement officials to search the premises for crack cocaine.

On February 26, officers searched Clemmons' apartment and found 24.9

---

[1] Clemmons asserts for the first time on appeal that the Government violated his due process rights under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), and that the district court violated Federal Rule of Criminal Procedure 11(b)(3) by accepting his guilty plea without ensuring that there was an adequate factual basis for it.  After review, we find no plain error and thus reject these arguments without further discussion.

ounces of crack cocaine and two handguns located underneath his refrigerator. Clemmons was thereafter arrested and taken into custody for violations of Florida law.

On June 18, Clemmons, a convicted felon, was indicted by a federal grand jury for possession with intent to distribute crack cocaine, in violation of 18 U.S.C. § 841(a)(1), and for possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Represented by Assistant Federal Public Defender Mary Mills, Clemmons was arraigned on the federal charges on September 2, 2003, at which time he entered a plea of not guilty. The state charges against him were dropped.

On October 1, a change-of-plea hearing was held before a magistrate judge. At that hearing, Clemmons pleaded guilty, without a written plea agreement, to both the drug charge and the firearm charge. During the comprehensive plea colloquy, the magistrate judge fully informed Clemmons of the charges against him and the punishment associated with each. The magistrate judge further explained to Clemmons the consequences of pleading guilty to a crime. Clemmons stated that he understood the consequences of his plea. The magistrate judge asked Clemmons whether he had any complaints about the quality of Mills's representation, and Clemmons responded: "No sir."

The Government then read into the record the facts upon which Clemmons'

guilty plea was based. Clemmons was given an opportunity to correct, challenge, or add to the recitation of the facts, but did not do so. Clemmons said that pleading guilty was in his best interest. Following the hearing, the magistrate judge issued a report recommending that the district judge accept Clemmons' guilty plea. The district court accepted Clemmons' guilty plea in a written order dated October 21. The district court scheduled Clemmons' sentencing hearing for January 14, 2005.

Shortly after entering his plea in October, Clemmons had his mother contact Mills to indicate that he wanted to withdraw his plea. Mills responded to Clemmons that she would file a motion to withdraw his plea if that was what he wanted her to do. The two later met to discuss Clemmons' pre-sentence investigative report. At that meeting Clemmons told Mills that he was not satisfied with her representation and reiterated to her that he wanted to withdraw his plea. Mills did not file a motion to withdraw on Clemmons' behalf.

On January 6, 2005, Clemmons filed a pro se motion asking that Mills be withdrawn from the case and that the district court appoint him a new attorney. His motion to substitute counsel was referred to a magistrate judge and, following a hearing on the matter, was granted. On January 21, the magistrate judge appointed a new attorney to represent Clemmons at the impending sentencing hearing, which had been rescheduled from the original date to allow Clemmons' new attorney time

4

to prepare.

On April 5, before the sentencing hearing was held, Clemmons' new attorney filed a motion to withdraw Clemmons' guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B). On September 16, the district court held an evidentiary hearing on the motion to withdraw. Clemmons testified at the hearing that he had asked Mills to investigate whether there were any fingerprints on the guns found underneath his refrigerator, and that she had informed him that no fingerprint tests had been conducted on the guns. Despite the assurances he had given the magistrate judge during the guilty plea colloquy, Clemmons testified at the withdrawal hearing that he had not been satisfied with Mills's representation of him. He testified that he pleaded guilty because he thought it was in his best interest to do so. Specifically, he thought his chances of receiving a shorter prison term were better if he pleaded guilty rather than proceeding to trial.

Mills also testified at the withdrawal hearing. Her testimony confirmed that she and Clemmons had had a rocky relationship from the outset. Consistent with Clemmons' testimony, Mils stated that Clemmons wanted to know early on in the case whether there were any fingerprints found on the guns. Mills conceded at the hearing that, initially, she thought that no fingerprint tests had been conducted on the guns.

Mills testified that, before Clemmons entered his guilty plea, she had reviewed with him the Government's evidence in the case, the search warrant, and the possible defenses to the charged crimes. She also testified that Clemmons knew, before he decided to plead guilty, that no fingerprints had been found on the guns. They had discussed that issue. She testified that she had explained to Clemmons that the lack of fingerprints on the guns had little relevance with regard to the felon-in-possession charge because of how broadly the term "possession" is defined by law.

Mills testified that, while he had expressed some initial reservations about pleading guilty, Clemmons ultimately informed her that he thought it would be in his best interest to do so. Mills testified that she did not know that the state judge who issued the warrant for Clemmons' apartment had ever been involved as a confidential informant for any law enforcement agency.

Mills testified that she discovered for the first time, while discussing Clemmons' PSI with him in January 2004, that Clemmons had never received the report detailing the fingerprint tests conducted on the guns. That report revealed that no identifiable prints had been found on the guns. Clemmons told Mills that if he had seen the report before he pleaded guilty he might not have done so.

On November 17, 2005, the district court entered a written order denying

6

Clemmons' motion to withdraw. The court concluded that Clemmons was represented by competent counsel, that his guilty plea was entered knowingly and voluntarily, and that the legal issues raised in support of his motion were without merit. This appeal followed.

## II.

A district court may allow a defendant to withdraw his guilty plea before sentencing if the defendant "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). We liberally construe this standard, but note that "there is no absolute right to withdraw a guilty plea before sentence is imposed." United States v. Bushert, 997 F.2d 1343, 1355 (11th Cir. 1993). The matter is committed to the sound discretion of the district court. To determine whether a defendant has shown a "fair and just" reason for withdrawing his plea, we look at the totality of the circumstances. See United States v. Buckles, 843 F.2d 469, 479 (11th Cir. 1988). "The good faith, credibility and weight of a defendant's assertions in support of a motion under Rule [11(d)(2)(B)] are issues for the trial court to decide." Id. "[A] defendant seeking to set aside a guilty plea must at the very least show that correct information would have made a difference in his decision to plead guilty." United States v. Schubert, 728 F.2d 1364, 1365 (11th Cir. 1984) (citation omitted).

"We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion." United States v. Najjar, 283 F.3d 1306, 1307 (11th Cir. 2002). "We will reverse a district court's decision [to deny] a motion to withdraw only if it is arbitrary or unreasonable." Id. (citing Bushert, 997 F.2d at 1355).

## III.

Clemmons argues that he should have been permitted to withdraw his guilty plea for four reasons. He argues on appeal that he would not have pleaded guilty if, at the time he entered his plea: (1) he had known that one of the guns found under his refrigerator had been inconclusively linked to a homicide for which he was not a suspect, (2) he had been given a copy of the report showing the inconclusive results of the fingerprint tests conducted on the guns, (3) Mills had told him that the warrant authorizing the search of his apartment might have been open to challenge under the Fourth Amendment based on the alleged staleness of the facts contained in the supporting affidavit, and (4) he had known that the state judge who issued the search warrant had, at some undisclosed time, assisted the FBI as a confidential informant in connection with an unrelated criminal investigation.

We take each of these arguments in turn.

## A.

8

First, Clemmons argues that he should have been permitted to withdraw his plea because, at the time it was entered, he did not know that law enforcement authorities suspected that one of the guns found in his apartment was linked to a homicide for which he was not a suspect. Clemmons argues that if he had known about the authorities' suspicions he would not have pleaded guilty, but instead would have defended the felon-in-possession charge at trial based on the theory that the perpetrator of the homicide was likely the person who hid the gun under his refrigerator without his knowledge. After reviewing the record, we conclude that this speculative assertion does not rise to the level of a nonfrivolous defense. The record discloses that the report allegedly linking the gun to a previous homicide was merely inconclusive with regard to such a link. Even assuming, however, that the gun was directly and conclusively linked to a previous homicide, Clemmons has come forward with nothing to suggest that the perpetrator of the crime was anyone who might have had access to his apartment. The notion that some unknown murder suspect *might have* come into Clemmons' apartment and *might have* stashed the gun underneath his refrigerator is purely conjectural and finds no support in the record. The district court did not abuse its discretion in rejecting this uncolorable argument as a basis for permitting Clemmons to withdraw his plea.

B.

9

Second, Clemmons argues that he should have been permitted to withdraw his plea because, at the time it was entered, he had not been given a copy of the report detailing the inconclusive results of the fingerprint tests conducted on the guns. The district court, however, following an evidentiary hearing, credited Mills's testimony and concluded that Clemmons in fact knew—based on conversations Mills and Clemmons had before he pleaded guilty—that his fingerprints had not been found on the guns. The district court's factual finding on this issue is supported by the record and is not clearly erroneous. Moreover, Clemmons concedes in his opening brief that Mills testified that she had told him "that no useable fingerprints had been recovered from the firearms." Br. at 24. Because Clemmons already knew at the time he pleaded guilty that his fingerprints were not found on the guns, the fact that he did not actually see the report confirming the absence of fingerprints is irrelevant. Stated differently, we cannot say that Clemmons' physical possession of the fingerprint report "would have made a difference in his decision to plead guilty," Schubert, 728 F.2d at 1365, because he was already aware of the findings the report contained. Thus the district court did not abuse its discretion in rejecting this argument as a basis for permitting Clemmons to withdraw his plea.

C.

10

Third, Clemmons suggests on appeal that he would not have pleaded guilty if he had been informed by Mills, prior to entering his plea, that the warrant giving rise to the search of his apartment could have been challenged under the Fourth Amendment based on the alleged staleness of the facts recounted in the supporting affidavit. We have searched the record and have found no indication by Clemmons—whether in live testimony at the withdrawal hearing, in an affidavit, or in any other submission—that his lack of knowledge about a possible staleness challenge to the warrant played a role in his decision to plead guilty. Thus Clemmons has not shown that his knowledge of the alleged staleness issue is "information [that] would have made a difference in his decision to plead guilty." Schubert, 728 F.2d at 1365. Because Clemmons "must at the very least," id., make such a showing before he is entitled to withdraw his plea, we cannot say that the district court abused its discretion in rejecting this argument as a basis for granting Clemmons' motion to withdraw.

D.

Finally, Clemmons argues that the Government should have disclosed to him, before he entered his guilty plea, the state judge's status as a confidential informant. Had he known this fact, Clemmons says that Mills could have mounted a Fourth Amendment challenge to the warrant on the ground that the judge's

11

participation with law enforcement officials undermined his ability to serve as a neutral and detached magistrate. However, there is no evidence in the record that the judge in question was serving as a confidential informant at the time he issued the warrant for Clemmons' apartment on February 19, 2003. In fact, the record discloses nothing about the judge's involvement as a confidential informant. Indeed, Clemmons does not even allege that the judge had any law enforcement involvement with the investigation of his case. We cannot say that the district court abused its discretion in rejecting as a basis for withdrawal Clemmons' conclusory assertions on this issue.[2]

## IV.

For the foregoing reasons, we conclude that the district court did not abuse its discretion in denying Clemmons' motion to withdraw his guilty plea under Rule 11(d)(2)(B). The district court's exercise of discretion was neither arbitrary nor unreasonable. See Najjar, 283 F.3d at 1307. Accordingly, the judgment of the district court is

---

[2] Even if there were evidence in the record to illuminate Clemmons' factual allegations with regard to this issue, we note that Clemmons has made no effort to address how his Fourth Amendment claim based on the judge's status as a confidential informant could overcome the good-faith exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405 (1984).

AFFIRMED.[3]

---

[3] Clemmons also argues that his guilty plea was void *ab initio* because Mills' representation of him leading up to the entry of his guilty plea was constitutionally deficient under the Sixth Amendment. See Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985) (ineffective assistance of counsel may be grounds for setting aside a guilty plea). Clemmons alleges that Mills' performance was deficient because (1) she failed to file a motion to suppress based on the staleness of the facts in the search warrant affidavit, (2) she failed to turn over to him the report concerning the fingerprint test results, and (3) she did not disclose to him the fact that one of the guns had been inconclusively associated with a homicide. Because we have rejected these claims as without merit, we likewise reject Clemmons' independent Sixth Amendment claim.

13