[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13338
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cr-00047-CDL-MSH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHMAR CHANDLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(August 13, 2020)

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

In April 2019, Johmar Chandler signed a written plea agreement in which he agreed to plea guilty to possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 942(a)(2), and to possessing methamphetamine with intent to distribute, in violation of 21 U.S.C.§§841(a)(1) and 841(b)(1)(C).  Among other things, the agreement provided that any "objections or challenges by [Chandler] to the Presentence Investigative Report or the [c]ourt's rulings thereon will not be grounds for withdrawal of the plea of guilty."

As relevant here, through the agreement, Chandler waived his right to appeal the sentence imposed upon him by the district court, except in two narrow situations: (1) if the sentence exceeded the high end of the advisory guideline range as the district court calculated it at the time of sentencing, or (2) if the sentence exceeded the statutory maximum.  Under the plea agreement, Chandler would be released from the waiver if the government appealed his sentence.  Chandler signed the agreement, which included text stating he had read the agreement, discussed it with his attorney, fully understood it, and agreed to its terms.

At the plea hearing, among other things, Chandler confirmed that he discussed the Sentencing Guidelines with his counsel, and he understood that the district court would calculate the guideline range, that the range was not binding on the court, and that his sentence could differ from any estimate he had received. He also acknowledged that he had read, signed, and understood the plea agreement.

2

Chandler confirmed that he understood that under the agreement, he waived his right to appeal or attack his sentence absent one of the noted exceptions. He then confirmed he had not been threatened, "frightened," or forced into accepting the plea agreement, nor had he been induced by any promises outside of the agreement itself. Finding that Chandler was competent and capable of entering an informed plea, he was aware of the charges and the consequences of his plea, the plea was knowing and voluntary, and it was supported by a sufficient factual basis, the court accepted the plea and adjudicated him guilty.

A Presentence Investigation Report ("PSI") assigned an offense level of 29, factoring into its calculations Chandler's two prior felony convictions for crimes of violence or controlled-substance offenses and thereby designating him a career offender. The PSI also assigned Chandler a criminal-history category of VI based on his career-offender status, pursuant to U.S.S.G § 4B1.1(b), and calculated a guideline imprisonment range of 151 to 188 months. At sentencing, Chandler objected to his designation in the PSI as a career offender, arguing that his state conviction for aggravated assault was not a crime of violence under § 4B1.1. The court denied the objection and sentenced Chandler to serve concurrent sentences of 120 months and 156 months, totaling 156 months' imprisonment to be followed by 3 years of supervised release.

3

Chandler appealed his sentence, arguing in essence that he should not have been designated a career offender because his prior conviction of aggravated assault under Georgia law is not a "crime of violence" under U.S.S.G § 4B1.2(a). Chandler did not address the applicability of his sentence appeal waiver. Asserting that Chandler freely and voluntarily waived his right to appeal his sentence and that no exceptions applied, the government moved to dismiss the appeal.

In his response to the government's motion, Chandler addressed the appeal waiver, contending both that it did not bar him from appealing an erroneous calculation of his guideline range and that he reasonably interpreted the waiver to bar only appeals of "the correct guideline range." He further argued that his actions in preserving his objection to the district court's guideline calculation reflected his understanding of the waiver. Chandler claimed that the waiver contained ambiguous language regarding whether it referred to the "correct guideline" or that calculated by the district court. Because reasonable people could interpret his appeal waiver differently, Chandler argued, and in light of the constitutional rights that he waived, this Court should read the ambiguity in his favor. Also, Chandler argued that he did not knowingly and voluntarily waive his right to appeal sentencing errors when the district court sentenced him within an allegedly incorrect guideline range, emphasizing that the court failed to clarify when explaining the appeal waiver that it referred to its own guideline calculations.

We review *de novo* the validity of a sentence appeal waiver. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). We will enforce a sentence appeal waiver if it was made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993). To establish that the waiver was made knowingly and voluntarily, the government must show either that (1) the district court specifically questioned the defendant about the waiver during the plea colloquy; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver. *Id*. We have held that a waiver is enforceable if the defendant said he understood it during the plea colloquy, confirmed that he had read the plea agreement and knew that it was binding, and entered into the plea agreement freely and voluntarily. *United States v. Weaver*, 275 F.3d 1320, 1323-24, 1333 (11th Cir. 2001).

However, we have acknowledged that "an effective waiver is not an absolute bar to appellate review." *Johnson*, 541 F.3d at 1068. "[T]here are certain fundamental and immutable legal landmarks within which the district court must operate regardless of the existence of sentence appeal waivers"; for example, a court may not impose a sentence exceeding the applicable statutory maximum, base a sentence "on a constitutionally impermissible factor such as race," or impose a sentence that is "not in accordance with the negotiated agreement." *Bushert*, 997 F.2d at 1350 n.18.

5

We interpret plea bargains "in accord with what the parties intended." *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005). However, we read ambiguous agreements "against the government." *See United States v. Rewis*, 969 F.2d 985, 988 (11th Cir. 1992). We have held that a district court's statements at sentencing, encouraging a defendant to appeal an issue, "[have] no effect on the terms of a previously approved plea agreement," and a district court lacks the power to modify such an agreement. *United States v. Howle*, 166 F.3d 1166, 1168-9 (11th Cir. 1999).

Here, the text of the waiver provides no support for Chandler's interpretation that the agreement barred appeals of only sentences based on the "correct" guideline range. The plea agreement is unambiguous; in fact, it states explicitly that Chandler waives his right to appeal his sentence "except in the event that the [d]istrict [c]ourt imposes a sentence that exceeds the advisory guideline range *as that range has been calculated by the [d]istrict [c]ourt at the time of sentencing*, or in the event that the [d]istrict [c]ourt imposes a sentence in excess of the statutory maximum." (emphasis added). Any statements made by the court at sentencing as to whether Chandler could appeal do not modify the agreement. *See Howle*, 166 F.3d at 1168-69.

Furthermore, neither of the exceptions specified in the waiver applies here. Chandler's 120-month and 156-month sentences fall within both the advisory guideline range and the statutory maxima. The government has not appealed

6

Chandler's sentence. Nor does this appeal implicate any "fundamental and immutable legal landmarks" or "extreme circumstances" that would preclude the enforcement of a valid sentence appeal waiver.

All that remains is whether Chandler knowingly and voluntarily waived his right to appeal his sentence. The record indicates that he did: Chandler read and signed the agreement, and after the district court explained the agreement, his waiver, and the guidelines to him, Chandler confirmed each time that he understood. By itself, that Chandler, later at sentencing, preserved his objection to his designation as a career offender does not show that his waiver was anything less than knowing and voluntary, in light of the evidence that he understood it when he pled guilty. Because Chandler knowingly and voluntarily waived his right to appeal his sentence, the waiver was unambiguous, and no exceptions apply, we **GRANT** the government's motion to dismiss.

**APPEAL DISMISSED.**