[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14511
_____

D.C. Docket No. 2:11-cr-14052-KMM-3

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

versus

CHRISTOPHER ANDREW HALE,

Defendant – Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(July 8, 2015)

Before MARTIN, Circuit Judge, and RESTANI,[*] Judge, and HINKLE,[**] District
Judge.

HINKLE, District Judge:

_____

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade,
sitting by designation.

[**] Honorable Robert L. Hinkle, United States District Judge for the Northern District of
Florida, sitting by designation.

This criminal appeal presents a single issue on the merits: whether the district court properly determined the amount of restitution.  The defendant's employer entered a services contract with a corporation that paid the defendant a kickback for his role in placing the contract.  The district court awarded as restitution the difference between the amount the defendant's employer actually paid for services under the tainted contract, on the one hand, and the amount the employer could have paid to have the same services rendered under an untainted contract, on the other hand.  This was the correct amount.

The appeal also presents a secondary issue: whether the defendant waived his right to appeal.  We hold that the government waived the right to invoke the waiver.

I

A grand jury returned a four-count superseding indictment against the appellant Christopher Andrew Hale and two codefendants, Jeffrey Wayne Aunspaugh and Angela Bryant Aunspaugh.  Count one charged conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349.  Count two charged conspiracy to commit money laundering—to launder the proceeds of the mail fraud—in violation of 18 U.S.C. § 1956(h).  Count three charged conspiracy to structure financial transactions in violation of the general conspiracy statute, 18

2

U.S.C. § 371.  Count four charged actually structuring transactions in violation of 31 U.S.C. § 5324.

Mr. Hale pleaded guilty to count one based on a written plea agreement. The agreement accurately set out the maximum sentence and added: "The court may also order restitution in an amount that will be determined at sentencing or in a separate restitution hearing."  The agreement placed no limit on the amount of restitution that could be awarded.  Finally, the agreement included a waiver of the right to appeal:

> Defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford Defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, Defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, _including any restitution order_, or to appeal the manner in which the sentence was imposed, _unless the sentence exceeds the maximum permitted by statute_ or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing.

(Emphasis added.)

At the Federal Rule of Criminal Procedure 11 plea proceeding, the judge reviewed the plea agreement with Mr. Hale at some length, reading verbatim the appeal waiver provision.  Mr. Hale said he had discussed the appeal waiver with his attorney and that the attorney had answered all Mr. Hale's questions about the waiver.  Mr. Hale explicitly acknowledged that he understood he was waiving any

right to appeal, with the limited exceptions set out in the agreement. The exception for a sentence that "exceeds the maximum permitted by statute" was not separately mentioned. The judge found, and Mr. Hale concedes, that the plea was knowing and voluntary.

The Aunspaughs went to trial. Mr. Hale testified, essentially admitting his own guilt and implicating the Aunspaughs. The jury convicted the Aunspaughs on all counts. The court sentenced each of the Aunspaughs to 63 months in prison and sentenced Mr. Hale to 30 months. The court ordered the defendants to pay restitution jointly and severally in the amount of $736,724.49.

Mr. Hale brings this appeal, challenging only the amount of restitution. The Aunspaughs have separately appealed, challenging their convictions and sentences, including the restitution amount. We address their appeal in a separate opinion.

II

During the period at issue, Glades Electric Cooperative ("GEC") provided electrical power in four rural counties in central Florida. GEC had a wholly owned subsidiary, Glades Utility Services, Inc. ("GUS"), that performed repair and maintenance services for GEC and unrelated entities. GUS performed work using its own equipment and employees but also sometimes hired subcontractors. And GUS allowed its employees to moonlight—to work on projects on their own or as

4

employees of others while not on company time—so long as the work was disclosed to GUS.

Mr. Hale became GUS's general manager in 2005. Before the year was out, he began directing subcontracts to Ener-Phase Electric, Inc., a corporation owned by the Aunspaughs. Ener-Phase did not perform the work under the subcontracts but instead hired a GUS employee, Steve Rolen, to do the work. Ener-Phase made secret payments to Mr. Hale for his role in this arrangement. Neither Mr. Hale nor Mr. Rolen disclosed the arrangement to anyone else at GUS.

The relationship between GUS and Ener-Phase greatly expanded in the aftermath of Hurricane Wilma. The hurricane crossed GEC's coverage area in October 2005, shifting thousands of wooden utility poles. The Federal Emergency Management Agency approved GEC's application for funds to straighten the poles. GEC assigned the work to GUS, which initially entered a subcontract with a local engineering firm, Transpower, Inc. Mr. Hale soon replaced that firm with Ener-Phase. Ener-Phase had a license and insurance coverage but otherwise lacked the resources to perform work of this kind. Ener-Phase again hired Mr. Rolen, who did the work using GUS's equipment.

For each of some 4,000 poles he straightened, Mr. Rolen charged Ener-Phase $75. Ener-Phase charged GUS $225. Ener-Phase generally paid Mr. Hale half of its $150 margin per pole. Both by his guilty plea and in his testimony at the

5

Aunspaugh trial, Mr. Hale admitted that the payments that he received were kickbacks—illegal compensation for steering the work to Ener-Phase.

III

Mr. Hale acknowledges that a defendant ordinarily can validly waive the right to appeal a sentence, including its restitution component. See, e.g., United States v. Johnson, 541 F.3d 1064, 1067 (11th Cir. 2008). Here, though, the waiver included an explicit exception for a sentence that "exceeds the maximum permitted by statute." Such an exception may be mandatory. See United States v. Bushert, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993). Mr. Hale contends the restitution amount exceeded the maximum permitted by statute because it exceeded GUS's actual loss. In one sense the amount of the victim's loss is both the minimum and maximum amount of restitution permitted by the statute.

Neither Johnson nor Bushert addressed this issue. Other circuits have held that the right to appeal is not waived in circumstances like these. See, e.g., United States v. Caruthers, 458 F.3d 459, 471 (6th Cir. 2006); United States v. Elliott, 264 F.3d 1171, 1173 (10th Cir. 2001); United States v. Teeter, 257 F.3d 14, 25 n.10 (1st Cir. 2001); United States v. Phillips, 174 F.3d 1074, 1076 (9th Cir. 1999); United States v. Feichtinger, 105 F.3d 1188, 1190 (7th Cir. 1997); United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992).

6

We need not resolve this issue, because the government neither moved to dismiss the appeal nor briefed this issue in a meaningful way. Instead, the government invoked the waiver in a cursory footnote in the "statement of the case" section of its brief. This was perhaps understandable; the same issue was presented in the Aunspaughs' appeal, and the Aunspaughs plainly did not waive the right to appeal. But understandable or not, the government's failure to meaningfully brief the waiver issue waives the issue. See, e.g., Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

IV

The Mandatory Victim Restitution Act requires a district court to include restitution in the sentence for any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). The proper amount of restitution is the amount of the victim's loss, with exceptions not applicable here.

In addressing the restitution award, we review the district court's findings of fact for clear error, and we review its conclusions of law de novo. See, e.g., United States v. Foley, 508 F.3d 627, 632 (11th Cir. 2007). The district court found, and the record amply demonstrates, that GUS suffered a loss. For each pole Mr. Rolen straightened, GUS paid Ener-Phase $225, when the most reasonable inference from the undisputed facts is that GUS could have hired Mr. Rolen directly for $75

7

per pole.  There is no apparent reason why Mr. Rolen would have been unwilling to accept the same $75 per pole for doing this work honestly and above board that he was willing to accept for doing it on the sly.

Calculating restitution awards is not exact science.  Those engaged in criminal conduct rarely keep books that allow a precise calculation.  Here, the record apparently does not show the precise number of poles Mr. Rolen straightened or who wound up with every dollar GUS paid out.  The best numbers available at the restitution hearing were these: Mr. Hale received $229,986.06, and Ener-Phase's take, after paying Mr. Rolen and Mr. Hale, was $506,738.43.  Adding these together, the district court found that GUS suffered a loss of $736,724.49.  Mr. Hale questions the methodology but not the arithmetic.

On these facts, the methodology was sound.  So, apparently, was the arithmetic.  The district court's finding that GUS suffered a loss in this amount was not clearly erroneous.

The methodology can be explained in two ways, both resting on the reasonable inference that GUS could have hired Mr. Rolen directly for the same price Mr. Rolen charged Ener-Phase.  The first explanation is this.  Had GUS hired Mr. Rolen directly, GUS would have saved the amount of the payments that ultimately wound up in the pockets of both Ener-Phase ($506,738.43) and Mr.

8

Hale ($229,986.06).  These are the amounts the district court added to arrive at its restitution award.

The second explanation takes a different route to the same destination.  GUS paid Ener-Phase to do the work but could have hired Mr. Rolen.  The amount GUS could have saved by hiring Mr. Rolen is the difference between the gross amount GUS paid to Ener-Phase and the amount Ener-Phase paid to Mr. Rolen.  Calculating the restitution award this way would produce the same result as the first calculation, because the amount paid out by GUS all wound up in the pocket of Ener-Phase, Mr. Rolen, or Mr. Hale.

To be sure, GUS may be obligated to return some or all of the restitution amount to FEMA or to GUS's employee-dishonesty insurer.  But it often happens that a victim recovers some or all of the loss from an insurer or from another source.  A restitution order need not address subrogation rights.  The essential fact is that these poles could have been straightened at a savings of $736,724.49.  It was GUS, nobody else, who overpaid by that amount, at least in the first instance.  Mr. Hale's obligation is to pay restitution for that loss.

IV

For these reasons, the district court's judgment is affirmed.