Eduardo **GARIBO–CARMONA,** Movant,

v.

**UNITED STATES of America,**
**Respondent.**

**CRIMINAL CASE NO.**
**1:11–CR–302–SCJ**
**CIVIL ACTION NO. 1:16–CV–2073–SCJ**

United States District Court,
N.D. Georgia, Atlanta Division.

Signed 10/28/2016

Eduardo Garibo, Coleman, FL, pro se.

**MOTION TO VACATE 28 U.S.C § 2255**

### ORDER

HONORABLE STEVE C. JONES,
UNITED STATES DISTRICT JUDGE

After pleading guilty to conspiracy to commit racketeering (see doc. 155),[1] Eduardo Garibo moves under 28 U.S.C. § 2255 to vacate his conviction and sentence. Doc. 184. Review of the parties' briefing shows that his motion must be denied.

---

1. All citations are to the docket in 1:11–cr–302, and all page numbers are those imprinted by the Court's docketing software.

2. In particular, Garibo "[t]o the maximum extent permitted by federal law," agreed to:

 voluntarily and expressly waive[ ] the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the district court.

## I. BACKGROUND

 After the Court sentenced him to 276 months' imprisonment, Garibo never appealed, likely because his plea agreement contained a waiver of his direct appeal and collateral attack rights. See doc. 121–1 at 12.[2] Garibo filed the instant § 2255 motion over four years later. Doc. 184 at 13 (signature-filed [3] July 13, 2016). In it he argues that Johnson v. United States, — U.S. —, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), voids his conspiracy conviction. Doc. 184 at 4. Garibo premises his motion's timeliness on Johnson retroactively applying to his case. See doc. 184 at 12; 28 U.S.C. § 2255(f)(3); Welch v. United States, — U.S. —, 136 S.Ct. 1257, 1265, 194 L.Ed.2d 387 (2016) (Johnson is a new substantive rule and thus applies retroactively to cases on collateral review).

The Government opposes, arguing that Garibo procedurally defaulted his claims; waived his right to collaterally attack his sentence; untimely sought relief; and, regardless of procedural bars, that Johnson has no application to a racketeering conspiracy conviction. Doc. 62 at 24–25.

## II. ANALYSIS

### A. Procedural Default

 The Government contends that the Court should not reach the merits of

---

Doc. 121–1 at 12.

3. " 'Under the 'prison mailbox rule,' a *pro se* prisoner's federal habeas petition is deemed filed on the date it is delivered to prison authorities for mailing, which, absent evidence to the contrary, is presumed to be the date executed. See Houston v. Lack, 487 U.S. 266, 275–76, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).' Lawson v. Thomas, 2015 WL 9703422, at *2 n.1 (N.D. Ala. Dec. 17, 2015); Natson v. United States, 494 Fed.Appx. 3, 4 (11th Cir. 2012)." Williams v. United States, No. CR614-001, 2016 WL 3194368, at *2 (S.D. Ga. June 6, 2016).

Garibo's claim because he waived his Johnson argument by not raising it on direct appeal. Doc. 190 at 10–12. As the Government correctly notes, a § 2255 motion may not be used as a surrogate for appellate review. Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004); see Stone v. Powell, 428 U.S. 465, 478 n.10, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (28 U.S.C. § 2255 will not be allowed to do service for an appeal). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (footnote added). Defaults may be overcome if (1) the movant can show "cause excusing his failure to raise the issue previously and prejudice from the alleged error," United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); or (2) "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234.

### 1. Cause

■ "To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel" cause exists. Reed v. Ross, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). "In order to establish the novelty of a constitutional claim sufficient to provide cause, a defendant must initially demonstrate that his situation is one where a court has 'articulated a constitutional principle that has not been previously recognized but which has been held to have retroactive application.'" Hargrave v. Dugger, 832 F.2d 1528, 1530–31 (11th Cir. 1987) (quoting Reed, 468 U.S. at 17, 104 S.Ct. 2901); see also Howard v. United States, 374 F.3d 1068, 1072 (11th Cir. 2004). "A new retroactive decision," however, "must be a sufficiently 'clear break with the past,' so that an attorney representing the defendant would not reasonably have had the tools for presenting the claim." Hargrave, 832 F.2d at 1531. Claim futility, by contrast, "cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Bousley v. United States, 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

The defendant in Hargrave, for example, "was sentenced to death in 1975." 832 F.2d at 1531. "Two years later, the Supreme Court held that" juries may consider, "as a mitigating factor," any circumstance of the offense or anything the defendant proffered "as a basis for a sentence less than death." Id. (quoting Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). That "constitutional principle ... had not been previously recognized," and later was "retroactively applied." Hargrave, 832 F.2d at 1531 (citing Songer v. Wainwright, 769 F.2d 1488, 1489 (11th Cir. 1985)).

After surveying applicable law available to Hargrave's attorney at the time of his sentencing and appeal, the en banc court concluded that:

Lockett was such a change in the law, and that a successful claim based on exclusion of non-statutory mitigating circumstance was unavailable under federal and Florida law preceding Lockett. While the law was "open" in the sense that no statute or court decision directly foreclosed a Lockett challenge when Hargrave was sentenced and during the pendency of his direct appeal, there is

little in the relevant case law to suggest that such a claim would have viability. Hargrave, 832 F.2d at 1531; see also id. at 1532 ("This Court has described Lockett as a 'direct reversal' of Florida mitigating circumstances law...."). "Since Hargrave 'lacked the tools to construct [his] constitutional claim,' Engle, 456 U.S. at 133, 102 S.Ct. at 1574, his failure to object to the judge's consideration only of statutory mitigating circumstances at the sentencing hearing and on appeal to the Florida Supreme Court [was] excused. [The court] thus conclude[d] that Hargrave had cause for his default." Id. at 1533.

Garibo's Johnson claim, as discussed below, is facially frivolous. Nevertheless, had he plied a more meritorious argument, it would not qualify as procedurally defaulted. Some Johnson background is necessary to illuminate why.

ACCA provides enhanced penalties for defendants who are (1) convicted of being felons in possession of firearms in violation of 18 U.S.C. § 922(g) and (2) have "three prior convictions ... for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). It defines "violent felony" as, among other things, a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." [4] Id. at § 924(e)(2)(B)(i). Johnson found that "residual" clause so vague as to violate due process. See 135 S.Ct. at 2557. Crimes falling under ACCA's other clauses

(known as the "elements" and "enumerated crimes" clauses), however, are not affected by Johnson. Id. at 2563.

Before Johnson, the Supreme Court (lower courts, too) struggled to determine the precise contours of ACCA's residual clause. In attempting to "discern its meaning," the Court has

held that the residual clause (1) covers Florida's offense of attempted burglary, James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007); (2) does *not* cover New Mexico's offense of driving under the influence, Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008); (3) does *not* cover Illinois' offense of failure to report to a penal institution, Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009); and (4) does cover Indiana's offense of vehicular flight from a law-enforcement officer, Sykes v. United States, 564 U.S. 1, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011).

Johnson, 135 S.Ct. at 2556. Critically, "[i]n both James and Sykes, the Court rejected suggestions by dissenting Justices that the residual clause violates the Constitution's prohibition of vague criminal laws. Compare James, 550 U.S. at 210, n.6, 127 S.Ct. 1586,[5] with id., at 230, 127 S.Ct. 1586 (Scalia, J., dissenting); compare Sykes, 564 U.S. at 13–15, 131 S.Ct. at 2276–2277, with id., at 31–36, 131 S.Ct. at 2286–2288 (Sca-

---

**4.** As more thoroughly explained by the Eleventh Circuit:

ACCA gives three definitions of "violent felony." First, § 924(e)(2)(B)(i) covers any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." This is known as the "elements clause." Second, § 924(e)(2)(B)(ii) covers any offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." The first 9 words of that subsection are called the

"enumerated crimes clause," and the last 13 are called the "residual clause."

In re Robinson, 822 F.3d 1196, 1197 (11th Cir. 2016).

**5.** "While ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses, we are not persuaded by Justice Scalia's suggestion—which was not pressed by James or his amici—that the residual provision is unconstitutionally vague." James, 550 U.S. at 210 n.6, 127 S.Ct. 1586.

lia, J., dissenting)." Johnson, 135 S.Ct. at 2556 (footnote added).

■ We now know that James and Sykes were wrong. We also know that Johnson applies retroactively to cases on collateral review. See Welch v. United States, — U.S. ——, 136 S.Ct. 1257, 1268, 194 L.Ed.2d 387 (2016). A Johnson claimant therefore can meet his initial burden to show that "his situation is one where a court has 'articulated a constitutional principle that has not been previously recognized but which has been held to have retroactive application.'" Hargrave, 832 F.2d at 1530–31 (quoting Reed, 468 U.S. at 17, 104 S.Ct. 2901).

Johnson also is the quintessence of a "sufficiently clear break with the past, [such] that an attorney representing the defendant would not reasonably have had the tools for presenting the claim." Hargrave, 832 F.2d at 1531 (quotation marks omitted). "[N]o statute or court decision directly foreclosed a Lockett challenge" in Hargrave, and practically nothing "in the relevant case law ... suggest[ed] that such a claim would have viability." Hargrave, 832 F.2d at 1531. Before Johnson, *two* Supreme Court decisions expressly rejected vagueness challenges to ACCA's residual clause. See James, 550 U.S. at 210, n. 6, 127 S.Ct. 1586; Sykes, 131 S.Ct. at 2276–2277. Indeed, the original petition for certiorari in Johnson, recognizing that precedent foreclosed due process challenges, did not assert vagueness; that issue only arose after the Court asked the parties to re-brief. See Pet's Suppl. Br., Johnson v. United States of America, 2015 WL 721234, at *2 (U.S. Feb. 18, 2015) ("The Court has asked the parties to ad-

dress whether the "residual clause" of the Armed Career Criminal Act (ACCA) is unconstitutionally vague."). Johnson, then, did not simply arise from an unlikely source. It rose from the dead. If that's not novelty, nothing is.[6]

The Government has, at times, characterized a pre-Johnson, Johnson claim as "futile." See United States v. Tibbs, No. 1:13–cr–186, doc. 199 at 11 (N.D. Ga. Sept. 16, 2016) ("The perceived futility of raising an objection or issue on appeal does not constitute 'cause' excusing a default."). Certainly futility and novelty conceptually overlap. Johnson claims *were* futile insofar as binding Supreme Court precedent precluded their assertion prior to 2015. But the futility Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), and other cases disdain as cause for default refers to claims that "simply ... [were] unacceptable to [a] particular court at [a] particular time." Engle, 456 U.S. at 130 n.35, 102 S.Ct. 1558. Johnson claims weren't merely unacceptable— they were flatly prohibited. Again, that rings a vague bell of futility. But the proper understanding of novelty vs. futility— and the one Reed, Hargrave, and other cases cleave to—says that barred claims later revealed to exist that also apply retroactively represent "clear break[s] with the past" that constitute cause for procedural defaults. See Reed, 468 U.S. at 17, 104 S.Ct. 2901 ("By definition," when a Supreme Court "decision ... explicitly overrule[s]" a prior precedent and a new rule applies retroactively, there could have been "no reasonable basis upon which an attorney previously could have urged a ...

---

**6.** At least two other courts agree. See Duhart v. United States, No. 16–61499–CIV–MARRA, 2016 WL 4720424, at *4 (S.D. Fla. Sept. 9, 2016) (cause because of claim novelty, and actual prejudice existed to excuse movant's failure to raise his § 924(c)–Johnson claim on direct appeal); United States v. Gomez, No.

2:04–CR–2126–RMP, 2016 WL 1254014, at *4 (E.D. Wash. Mar. 10, 2016) ("As Defendant was unable, due to the governing law not yet existing, to raise his claim arising from Johnson, procedural default has no application in this matter.").

court to adopt the position that th[e] Court ... ultimately adopted. Consequently, the failure of a defendant's attorney to have pressed such a claim ... is sufficiently excusable to satisfy the cause requirement.").

Of course, Garibo's particular Johnson claim lacks any merit because Johnson simply does not apply to his RICO conviction. Arguing for its novelty, then, would be a bit like insisting that 2 + 2 = 5. Still, had he filed a weightier motion, the Government's default argument would perish. He didn't though, and he never appealed,

so his frivolous Johnson claim indeed is defaulted.

**B. Waiver**

 Garibo's plea agreement's waiver also bars post-conviction relief. Subject to inapplicable exceptions, he waived his direct appeal and collateral attack rights (doc. 121–1 at 12), and has never claimed that he did so unknowingly or involuntarily.[7] Indeed, he plies no allegations at all relating to his plea's validity. Absent any claim that he unknowingly and involuntarily double waived,[8] it will be enforced.

7. "A sentence-appeal waiver is valid if the defendant made the waiver knowingly and voluntarily. Williams v. United States, 396 F.3d 1340, 1341 (11th Cir. 2005). To establish that the waiver was made knowingly and voluntarily, the government must show either that (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record makes it manifestly clear that the defendant otherwise understood the full significance of the waiver. Id.; see also United States v. Bushert, 997 F.2d 1343, 1350–51 (11th Cir. 1993). When a valid sentence-appeal waiver is entered into knowingly and voluntarily and contains express language waiving the right to collateral review, it is enforceable and precludes the defendant from collateral attacking a sentence on the basis of ineffective assistance of counsel. Williams, 396 F.3d at 1342." Demello v. United States, 623 Fed.Appx. 969, 971–72 (11th Cir. 2015); Taylor v. United States, No. CV615–026, 2016 WL 742118, at *3 (S.D. Ga. Feb. 24, 2016) (enforcing a collateral attack waiver materially identical to Garibo's).

8. Fundamental fairness concerns—somewhat akin to contract law's unconscionability doctrine—can, in certain situations, lead courts to disregard waivers. See, e.g., Bushert, 997 F.2d at 1348–49 n. 18 ("[T]here are certain fundamental and immutable legal landmarks within which the district court must operate regardless of the existence of sentence appeal waivers."). Take, for example, a defendant who receives an ACCA-enhanced 300 month sentence for being a felon-in-possession based on prior convictions for violent felonies. That sentence is below the ACCA maximum of life,

but above the ACCA-less maximum of 10 years for plain vanilla § 922(g) convictions. If the predicates used to enhance the sentence later fall victim to Johnson's logic—and thus cannot be considered violent felonies—the enhancement is void and the 300 month sentence is above the 120 month statutory maximum.

An otherwise valid waiver, however, absent an exception to its enforcement, could stand in the way of that defendant receiving relief. Enter fundamental fairness. Just as courts cannot impose above-statutory maximum sentences, so too can they not enforce waivers where doing so would generate precisely that result. Bushert, 997 F.2d at 1348–49 n. 18; United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992) ("[A] defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court. For example, a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race.").

Admittedly, fairness doctrine in the waiver arena lacks precise contours. Waivers that enable above-the-statutory-maximum sentences clearly qualify as unfair. Racially motivated sentences do, too. Marin, 961 F.2d at 496. Beyond those narrow confines, some courts have speculated that "[t]here may be a situation where it ... would be fundamentally unfair to hold a defendant to a waiver of appeal because the combination of the length of sentence and the conduct for which the defendant is held accountable are vastly different from what was anticipated by the plea agreement." United States v. Rosa, 123 F.3d

Even if Garibo alleged plea knowledge defects, it would still fail. At his guilty plea hearing, the Court explained the waiver and confirmed that he understood that he waived his appellate *and* collateral attack rights. See doc. 189 at 24 (The Court: "Do you also understand that you are giving up your right to collaterally attack your conviction and sentence in any post-conviction proceeding?" Garibo: "Yes."); see also id. (The Court: "Has anyone used any force or threat of force to get you to give up your right to appeal your sentence and conviction?" Baiamonte: "No, sir."). Garibo affirmed that he had enough time to consider his plea decision, and that he was satisfied with his attorney's advice. Id. at 19–20. He also admitted that he pled guilty voluntarily and only after his attorney explained the plea agreement. Id. at 19, 24. And he denied that anyone improperly pressured him to plead. Id. at 15. By his signature on the plea agreement, Garibo confirmed that he understood that "the appeal waiver ... [would] prevent [him] ... from ... challenging [his] conviction and sentence in any post-conviction proceeding." Doc. 121–1 at 16. At bottom, Garibo knowingly and voluntarily waived his right to collaterally attack his convictions and sentence. Bushert, 997 F.2d at 1350–51.

94, 102 (2d Cir. 1997). The Eleventh Circuit, however, has never articulated such a broad view of unfairness and, at present and certainly not on this case's record, neither will this Court.

Some courts also disregard waivers if the imposed sentence is not in accordance with a "set sentence" plea agreement (see United States v. Navarro–Botello, 912 F.2d 318, 321 (9th Cir. 1990) ("[A] waiver of the right to appeal would not prevent an appeal where the sentence imposed is not in accordance with the negotiated agreement."); if a movant presents meritorious ineffective assistance of counsel claims (see, e.g., Bushert, 997 F.2d at 1350 n.17); and if the government breaches the plea. See Rosa, 123 F.3d at 98 ("A defen-

■ Waiver or not, Johnson provides Garibo no succor here because it simply has no application in this case. Garibo's sentence includes no ACCA enhancements, his Guidelines recommended sentence suffered no career offender enhancement (that Guidelines provision contains identical language to ACCA's residual clause), and his racketeering conviction likewise includes no ACCA-esque language that might be susceptible to Johnson's logic. As the Government correctly notes, Garibo's argument "fails because [his conviction and sentence] in no way implicate[ ] Johnson." Doc. 190 at 14.

Garibo thus also cannot invoke 28 U.S.C. § 2255(f)(3) to define when his one-year statute of limitations began to run. Instead, he's relegated to § 2255(f)(1), which starts the limitations clock on the day a conviction becomes final.

■ Because he never appealed (again, likely because of his appeal waiver), Garibo's conviction became final on April 11, 2012. Doc. 155 (judgment entered on March 28, 2012); Fed. R. App. P. 4(b)(1)(A) (criminal defendants must file a notice of appeal within 14 days of the entry of judgment). That means he had to file his § 2255 motion no later than April 11, 2013. 28 U.S.C. § 2255(f)(1). His June 13, 2016 filing thus came over three years too late.[9]

dant may appeal if the Government breaches the terms of the plea agreement.") (citing United States v. Gonzalez, 16 F.3d 985, 990 (9th Cir. 1993)). Regardless, this case presents none of the aforementioned situations. Baiamonte's waiver thus must be enforced.

9. Equitable tolling can, in exceptional circumstances, allow untimely motions to proceed. See Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). So can a " 'fundamental miscarriage of justice' " that " 'has probably resulted in the conviction of one who is actually innocent.' " McQuiggin v. Perkins, —— U.S. ——, 133 S.Ct. 1924, 1931, 185 L.Ed.2d 1019 (2013)). Garibo invokes neither tolling nor the miscar-

Accordingly, this Court **DENIES** Eduardo Garibo's 28 U.S.C. § 2255 motion. Doc.184. Because the Court discerns no worthy issues, it also **DENIES** him a Certificate of Appealability (COA). See 28 U.S.C. § 2253(c)(2); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a [COA] when it enters a final order adverse to the appli-

cant.") (emphasis added). Any motion for leave to appeal *in forma pauperis* therefore is moot.

**SO ORDERED,** this 28th day of October, 2016.

riage exception, and offers no new evidence

or exceptional circumstances to trigger either.