[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12259
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00462-MSS-TGW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ILFRENISE CHARLEMAGNE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 17, 2019)

Before WILSON, JILL PRYOR, and EDMONDSON, Circuit Judges.

PER CURIAM:

Ilfrenise Charlemagne appeals her conviction and 33-month sentence imposed after Charlemagne pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343.  Charlemagne also challenges the amount of her restitution and forfeiture obligations.  No reversible error has been shown; we affirm in part and dismiss the appeal in part.

## I.

On appeal, Charlemagne argues that her guilty plea was not entered knowingly and voluntarily; she says the district court (in violation of Fed. R. Crim. P. 11) failed to inform her adequately of the consequences of her guilty plea.  In particular, Charlemagne contends she was not advised properly about (1) her right to a speedy and public jury trial; (2) her right to testify and to compel the attendance of witnesses at trial; (3) her waiver of her trial rights if the district court accepted her guilty plea; and (4) the district court's obligation to calculate the applicable guideline range and to consider that range, possible departures, and the 18 U.S.C. § 3553(a) sentencing factors in determining a sentence.

Because Charlemagne raised no objection to the adequacy of her plea proceedings in the district court, we review this argument only for plain error. See United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). Under the plain-error standard, the defendant must show "(1) error, (2) that is plain, and (3) that affects substantial rights." Id. An error affects a defendant's substantial rights if it "affected the outcome of the district court proceedings." United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005). A defendant seeking to establish plain error under Rule 11 "must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004).

The district court must "conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." United States v. Hernandez-Fraire, 208 F.3d 945, 949 (11th Cir. 2000). Rule 11 directs specifically that the court inform the defendant of -- and make sure the defendant understands -- certain matters. See Fed. R. Crim. P. 11(b)(1). In determining whether a defendant's plea is knowing and voluntary, the district court must address three "core concerns" underlying Rule 11: (1) whether the plea is free from coercion; (2) whether the defendant understands the nature of the charges; and (3) whether the defendant understands the consequences of the guilty plea. Hernandez-Fraire, 208 F.3d at 949. We will uphold a plea colloquy -- even if the district court fails to address

expressly an item listed in Rule 11 -- as long as the colloquy addresses adequately the three core concerns.  Id. at 950.

The district court committed no violation of Rule 11(b) during Charlemagne's plea colloquy.  About Charlemagne's right to a trial, the district court advised Charlemagne that she had the right to plead not guilty and to proceed to trial, that she had a right to have a lawyer represent her at trial, and that the government would have to prove her guilt beyond a reasonable doubt to a 12-member jury.  The district court also advised Charlemagne that, if she went to trial, she could decide whether she wanted to testify in her defense and that her decision not to testify could not be used against her.  The district court explained that, at trial, Charlemagne would have the right to cross-examine government witnesses, challenge the government's documents, and present her own evidence.  The district court confirmed that Charlemagne understood that, by pleading guilty, she would give up her rights to present a defense, to offer testimony, and to cross-examine the government's witnesses.  The district court also explained to Charlemagne that it would calculate her guidelines range at sentencing and that it had ultimate authority to sentence her up to the statutory maximum regardless of the parties' recommendations.

Even to the extent the district court failed to address specifically an item under Rule 11, the district court addressed adequately Rule 11's three "core

4

concerns."  About the first two "core concerns," nothing evidences (nor does Charlemagne argue) that she was coerced into pleading guilty or that she failed to understand the charges against her.

About Rule 11's third "core concern," the district court addressed in detail the consequences of Charlemagne's guilty plea, including that she would waive her right to a trial, her right to testify and to present witnesses in her defense, and her right to challenge the government's evidence against her.  The district court also explained that Charlemagne could be sentenced up to a statutory maximum of 20 years' imprisonment and up to 3 years' supervised release, would be subjected to a forfeiture obligation between $36,000 and $755,000, and could be subject to deportation or other immigration proceedings.

Charlemagne has failed to allege that a reasonable probability exists that -- but for the district court's alleged Rule 11 errors -- she would not have entered her guilty plea.  Accordingly, Charlemagne cannot show that the alleged errors affected her substantial rights.  See Dominguez Benitez, 542 U.S. at 83.  The district court committed no plain error in determining that Charlemagne's guilty plea was knowing and voluntary.

II.

Charlemagne challenges the district court's calculation of her sentencing guidelines range, the procedural and substantive reasonableness of her sentence, and the amount of her restitution and forfeiture obligations. The government contends that Charlemagne's arguments are barred by the plea agreement's sentence-appeal waiver.

We review de novo the validity of a sentence-appeal waiver. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008). A sentence-appeal waiver is enforceable if it is made knowingly and voluntarily. United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993). To establish that the waiver was knowing and voluntary, the government must show either that "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." Id.

Charlemagne's arguments about the calculation of her guidelines range and the procedural and substantive reasonableness of her sentence of incarceration are barred by her sentence-appeal waiver. Charlemagne's plea agreement provided that Charlemagne waived "the right to appeal [her] sentence on any ground, including the ground that the Court erred in determining the applicable guidelines

6

range." On top of that agreement, at the plea colloquy, the district court explained in detail that Charlemagne had the right to appeal her sentence in only three limited circumstances: if the sentence exceeded the guidelines range, the sentence exceeded the statutory maximum sentence, or the sentence violated the Eighth Amendment. Charlemagne indicated that she understood the sentence-appeal waiver. Moreover, Charlemagne confirmed that she had discussed the plea agreement with her lawyer and that Charlemagne understood the consequences of her guilty plea.

On this record, Charlemagne's waiver of her right to appeal the length of her term of imprisonment was made knowingly and voluntarily. Accordingly, we will not address the merits of those arguments; we dismiss that portion of Charlemagne's appeal.

We are less certain, however, that Charlemagne made a knowing and voluntary waiver of her right to appeal the amount of her restitution and forfeiture obligations. Because we cannot say that "it is manifestly clear from the record" that Charlemagne understood that she was waiving her right to appeal the amount of her restitution and forfeiture obligations, we will reach the merits of those arguments on appeal.

III.

About her restitution and forfeiture obligations, Charlemagne contends that the district court failed to make specific findings about the loss amount attributable to Charlemagne. Charlemagne also argues that the district court shifted improperly the burden of proof by requiring Charlemagne to prove her requests for credits instead of requiring the government to prove the loss amount by a preponderance of the evidence.

We review for clear error the district court's determination about loss amount. United States v. Campbell, 765 F.3d 1291, 1302 (11th Cir. 2014). Under the clear-error standard, we will overturn a district court's loss calculation only if "we are left with a definite and firm conviction that a mistake has been committed." Id.

The district court "need only make a reasonable estimate of the loss, given the available information." United States v. Barrington, 648 F.3d 1178, 1197 (11th Cir. 2011). Because estimating loss amount is a highly fact-dependent inquiry, we have said that "district judges are entitled to considerable leeway in choosing how to go about this task." United State v. Campbell, 765 F.3d 1291, 1301 (11th Cir. 2014). Moreover, given the district court's "unique position to assess the evidence and estimate the loss based upon that evidence . . . the court's loss determination is

entitled to appropriate deference." Id.  The district court must however "support its loss calculation with reliable and specific evidence." Id. at 1304.  The government bears the burden of proving the loss amount by a preponderance of the evidence. Id.

The district court committed no clear error in calculating the loss amount and, thus, in determining the amount of Charlemagne's restitution and forfeiture obligations.  The district court began its loss calculation with the amount the government -- through the Social Security Administration and the Florida Medicaid program -- transferred to Charlemagne.  Where "a defendant's conduct was permeated with fraud" -- as in this case -- we have said that "a district court does not err by treating the amount that was transferred from the victim to the fraudulent enterprise as the starting point for calculating the victim's pecuniary harm."  See Campbell, 765 F.3d at 1305.  The district court then reduced properly that initial amount by proven expenses incurred and payments made by Charlemagne for the benefit of the assisted-living facility residents.  See id. at 1302 ("If the defendant . . . rendered any legitimate services to the victim before the fraud was detected, the loss amount must be reduced by the fair market value of . . . the services rendered.").

At the sentencing hearing, the government presented testimony from a forensic accountant with the Federal Bureau of Investigation.  The accountant

9

testified -- based on her review and analysis of the financial and bank records from Charlemagne's assisted-living facilities -- about the amount of government benefits Charlemagne obtained and about the expenditures made for the benefit of the residents of the assisted-living facilities.  The district court considered the government's evidence and Charlemagne's arguments about additional expenses that Charlemagne believed should be credited against the loss amount.  The district court explained adequately its reasons for rejecting Charlemagne's arguments.  The resulting loss amount is supported by specific and reliable evidence on the record; we are not "left with a definite and firm conviction that a mistake has been committed."

AFFIRMED IN PART; APPEAL DISMISSED IN PART.