[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13035
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cr-10018-KMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELMER MISAEL GARCIA RAMIREZ,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 5, 2019)

Before WILSON, NEWSOM and BRANCH, Circuit Judges.

PER CURIAM:

Elmer Misael Garcia Ramirez appeals his conviction and sentence for

conspiracy to possess with intent to distribute five or more kilograms of cocaine

while on board a vessel subject to the jurisdiction of the United States, in violation

of 46 U.S.C. § 70506(b).  Ramirez argues, first, that the district court erred in determining that it had jurisdiction over the case, because the government did not present sufficient evidence that the captain of the vessel claimed Colombian nationality.  Second, Ramirez argues that the district court clearly erred in denying him a two-level "safety-valve" reduction in his sentence based on his purported lack of truthfulness.  The government responds that Ramirez's challenge to his sentence is barred by his valid appeal waiver.  Finding that the government presented sufficient evidence of jurisdiction and that Ramirez waived his right to appeal, we affirm.

## I

### A

Ramirez, a Guatemalan national, was a crewmember on a go-fast boat interdicted by the United States Coast Guard in international waters, approximately 560 nautical miles south of the Mexico-Guatemala border.  Ramirez was joined on the vessel by Robinson Banguera, a Colombian national, and Gustavo Cedeno and Pedro Quintero, Ecuadorian nationals.  The vessel jettisoned 29 bales, which were retrieved and determined to contain 760 kilograms of cocaine.  Banguera was identified as the person in charge, and he claimed Colombian nationality for the vessel.  The USCG contacted the Colombian government, which could neither confirm nor deny the vessel's registry.

2

**B**

Ramirez and his fellow crewmembers were charged with one count of conspiracy to possess with intent to distribute five or more kilograms of cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(b), and one substantive count of possession with intent to distribute five or more kilograms of cocaine on board a vessel subject to the jurisdiction of the United States, in violation of § 70503(a)(1).  The government moved for a determination of jurisdiction under the Maritime Drug Law Enforcement Act (MDLEA).  The government submitted a signed certificate from USCG Commander Francis DelRosso in support of jurisdiction.  Pursuant to his authority as the Secretary of State's designee, DelRosso certified that the individual in charge of the go-fast boat made a verbal claim of Colombian nationality for the vessel and that, pursuant to the bilateral agreement between the United States and Colombia, the Columbian government was contacted but could not confirm the boat's nationality or registry.

At a hearing to determine jurisdiction, Ramirez disagreed with the assertion that Colombian registry was claimed for the vessel, and he argued that at trial the evidence would have shown that the crewmembers consisted of one Colombian national, one Guatemalan national, and two Ecuadorian nationals.  Ramirez argued

3

that the USCG had failed to contact Ecuador or Guatemala, so allowing DelRosso's certification to serve as conclusive proof of jurisdiction violated his due process rights and the separation of powers. The district court nonetheless held that the vessel was "without nationality" and thus subject to United States jurisdiction under 46 U.S.C. § 70502(c)(1)(A) and (d)(1)(C), as DelRosso's certification constituted conclusive proof of jurisdiction.

Ramirez entered a plea agreement with the government—he pleaded guilty to the conspiracy charge, and the government agreed to dismiss the substantive possession charge. As relevant to this appeal, Ramirez's plea agreement contained a sentence-appeal waiver. The waiver provided that Ramirez could appeal his sentence—or challenge the manner of its imposition—only if it either exceeded the statutory maximum or was the result of an upward variance from the established Sentencing Guidelines range. The government's factual proffer in support of the plea agreement detailed the above-described facts—that Colombian nationality was claimed for the vessel and that the vessel was classified as one without nationality, subject to United States jurisdiction. Ramirez was represented by counsel and had a Spanish-language translator at his change-of-plea hearing, during which he testified that he had a second-grade education. He affirmed that his guilty plea was knowing and voluntary, that the factual proffer was accurate, and that he understood that he was waiving his right to appeal.

4

Ramirez objected to his presentence-investigation report on several grounds—relevant to this appeal is his objection that he should have received a two-point safety-valve reduction, as contemplated by his plea agreement. The government argued that Ramirez failed to meet the fifth qualification of safety-valve relief, as he had not provided truthful information. The government asserted that Ramirez had provided untruthful information inconsistent with that of his codefendants and falsely claimed at his debriefing that he had been threatened into participating in the offense. Ramirez did not mention that his presence on the vessel was a result of threats against his family until he was in United States custody and attempting to cooperate with the government. The district court stated that it essentially had to make "a credibility determination as to whether to accept [Ramirez's] version" of the events, holding that it was "not satisfied that [Ramirez] ha[d] met [his] burden, and that his statements [we]re otherwise just eleventh-hour attempt[s] to make self-serving statements that [would] allow him to manipulate the guidelines in his favor for a two-level reduction." The district court therefore denied Ramirez's request for a two-point safety-valve reduction and sentenced him to 168 months of incarceration and five years of supervised release, a sentence at the low-end of the recommended Guidelines range.

## II

"We review a district court's interpretation and application of a statute concerning its subject-matter jurisdiction *de novo*, but we review factual findings with respect to jurisdiction for clear error." *United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016) (citation omitted). "A defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all *nonjurisdictional* defects in that defendant's court proceedings." *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984) (citation omitted). Parties cannot stipulate to federal jurisdiction; however, parties may "stipulate to *facts* that bear on [a] jurisdictional inquiry." *United States v. Iguaran*, 821 F.3d 1335, 1337 (11th Cir. 2016) (per curiam) (quoting citations omitted). It is the court's job, therefore, "to determine whether 'the stipulated facts give rise to jurisdiction.'" *Id.* (quoting another source).

The MDLEA makes it a crime for any person to possess with intent to distribute a controlled substance on board a vessel subject to United States jurisdiction. 46 U.S.C. § 70503(a)(1), (e)(1). Section 70502's definition of a vessel subject to United States jurisdiction includes "a vessel without nationality." *Id*. § 70502(c)(1)(A). A vessel without nationality, in turn, is defined as follows:

> **(A)** a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed; **(B)** a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to

6

enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and **(C)** a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

*Id*. § 70502(d)(1)(A)–(C).  "The response of a foreign nation to a claim of registry . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee."  *Id*. § 70502(d)(2); *see also United States v. Hernandez*, 864 F.3d 1292, 1299 (11th Cir. 2017).  "The very concept of a conclusive proof entails not only that no detail or corroboration is needed, but also that any contrary evidence is futile."  *Hernandez*, 864 F.3d at 1300.

The MDLEA provides three exclusive methods to make a claim of nationality or registry:

> (1) possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas; (2) flying its nation's ensign or flag; or (3) a verbal claim of nationality or registry by the master or individual in charge of the vessel.

46 U.S.C. § 70502(e); *see also United States v. Obando*, 891 F.3d 929, 933 (11th Cir. 2018).

Here, the district court did not err in determining that it had jurisdiction over Ramirez's case, as there was sufficient evidence to determine that his vessel was

"without nationality."[1]  *See* 46 U.S.C. § 70502(c)(1)(A), (d)(1)(C).  The Colombian government's response to the crewmembers' claim of registry was proved conclusively by DelRosso's certification.  *See id.* § 70502(d)(1)(C), (d)(2); *Hernandez*, 864 F.3d at 1299.  Thus, the only remaining issue is whether there was sufficient evidence to establish that a claim of Colombian registry was made in the first place.

DelRosso attested that the individual in charge of the go-fast vessel claimed Colombian nationality for the vessel, and Ramirez presented no evidence that this was not the case—rather, he argued that the USCG should have contacted the countries of origin of the other crewmembers before determining that the vessel was without nationality.  At Ramirez's change of plea hearing, he was given an opportunity to object to the facts proffered by the government stating that Banguera had claimed Colombian nationality for the vessel—when asked if there was "[a]nything [he] want[ed] to add or anything [that was] left out" of the government's proffer, Ramirez responded, "No."  The MDLEA explicitly provides that it is the claim of nationality or registry by the master of the vessel that matters when establishing a vessel's nationality—the personal nationalities of the

---

[1] Ramirez also argues that the United States does not have jurisdiction over this case because there was not a sufficient nexus between his conduct and the United States.  Ramirez correctly acknowledges that this Court has rejected any nexus requirement, *see e.g.*, *United States v. Campbell*, 743 F.3d 802, 809–10 (11th Cir. 2014), so his argument is foreclosed by our binding precedent.

crewmembers are irrelevant.  *See* 46 U.S.C. § 70502(e)(3).  Since there is no evidence that Colombian nationality was *not* claimed by Banguera, and DelRosso's attestation conclusively proved Colombia's response to the claim of registry, the vessel was properly deemed without nationality and subject to United States jurisdiction under the MDLEA.

### III

We review the validity of a sentence-appeal waiver *de novo*.  *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008).  A sentence-appeal waiver will be enforced if it was "made knowingly and voluntarily."  *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993).

To establish that a sentence-appeal waiver was made knowingly and voluntarily, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver."  *Id.* at 1351.  "Accordingly, where it is clear from the plea agreement and . . . colloquy, or from some other part of the record, that the defendant knowingly and voluntarily entered into a sentence appeal waiver, that waiver should be enforced without requiring the government to brief the merits of the appeal."  *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997) (per curiam).  "A defendant 'bears a heavy

9

burden to show' statements he made under oath at a plea colloquy were false." *United States v. Davila*, 749 F.3d 982, 996 (11th Cir. 2014) (per curiam) (quoting another source).

Here, Ramirez knowingly and voluntarily waived his appellate rights. The district court explicitly asked Ramirez if he "underst[oo]d that the terms of the plea agreement [we]re merely recommendations to the Court, that [it] can reject the recommendations without permitting [Ramirez] to withdraw [his] plea of guilty, and impose a sentence that is more severe than [he] anticipate[s,]" to which Ramirez replied "Yes." The district court also confirmed with Ramirez that he knew "that the sentence imposed may be different from any estimate [his] attorney" provided, and that "by entering into th[e] plea agreement and entering a plea of guilty," he was giving up his "right to appeal or collaterally attack all or part of [the] sentence." Ramirez confirmed that he had effective representation and that he had discussed the agreement in its entirety with his counsel. Thus, the "court specifically questioned [Ramirez] concerning the sentence appeal waiver during [his plea] colloquy," and "it is manifestly clear" that he "otherwise understood the full significance of the waiver." *Bushert*, 997 F.2d at 1351. Ramirez therefore waived his right to challenge his sentence on appeal, including the district court's decision not to apply a two-level safety-valve reduction at sentencing.

10

Accordingly, we dismiss Ramirez's challenge to his sentence and affirm his sentence and conviction.

**AFFIRMED.**