**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-10518

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

AGIM CERMA,
a.k.a. Jimmy,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:20-cr-00129-RSB-CLR-1

————————————

Before JORDAN, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Agim Cerma appeals his conviction and sentence for conspiracy to board an aircraft registered to the United States to

possess with intent to distribute cocaine.  He argues that the district court (1) plainly erred in finding his plea knowing and voluntary when the court failed to provide him with an Albanian translator and failed to ensure that he understood the nature of the charges against him; and (2) erred in imposing a four-level guidelines enhancement for his leadership role in the offense.  The government, in turn, argues that the guilty plea was valid and that we should dismiss Cerma's sentencing claim based on the sentence-appeal waiver in the plea agreement.  After review, we conclude that Cerma entered a knowing and voluntary guilty plea and that his sentencing claim is barred by the valid sentence-appeal waiver.  Accordingly, we affirm his conviction and dismiss his sentencing claim.

## I.    Background

A grand jury indicted Cerma and several codefendants for attempt to board an aircraft registered to the United States to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 959 and 963 (Count 1), and conspiracy to do the same (Count 2).

At Cerma's arraignment, a Spanish interpreter was provided.  The magistrate judge stated for the record that Cerma understood Spanish, but "would prefer in future proceedings to have an Albanian translator."  And Cerma's counsel stated, "that's correct."  The magistrate judge then asked Cerma whether he wished to proceed with the arraignment with a Spanish interpreter, and he stated that he did.  Cerma then waived a formal reading of

the indictment.  Nevertheless, the magistrate judge summarized the charges.  As it related to Count 2, the magistrate judge explained that

> the defendants are charged with the offense of conspiracy to board an aircraft registered to the United States to possess with intent to distribute a controlled substance, more specifically, cocaine. This is a violation of Title 21 of the United States Code Sections 963 and 959.
>
> More specifically, it is alleged that beginning on a date at least as early as May of 2020, up to and including on or about October the 22nd of 2020, that Mr. Cerma and . . . other named defendants did knowingly and intentionally conspire together to board an aircraft registered in the United States to possess with intent to distribute five kilograms or more of cocaine hydrochloride.

Cerma pleaded not guilty.  The government noted that "[t]he discovery in [the] case [was] voluminous," and included numerous recorded calls and messages "all in Spanish" between the defendants.  At the end of the arraignment, Cerma's counsel reiterated that Cerma "would request an Albanian translator for any future court hearing."

Thereafter, Cerma entered into a written plea agreement in which he agreed to plead guilty to a lesser-included offense of Count 2—conspiracy to board an aircraft registered to the United States to possess with intent to distribute cocaine, in violation of 21

U.S.C. §§ 959 and 963.[1]  The plea agreement set forth the elements of the offense and provided a detailed factual basis.  The plea agreement also contained the following sentence-appeal waiver:

> Defendant entirely waives Defendant's right to a direct appeal of Defendant's conviction and sentence on any ground (including any argument that the statute to which the Defendant is pleading guilty is unconstitutional or that the admitted conduct does not fall within the scope of the statute).  The only exceptions are that the Defendant may file a direct appeal of Defendant's sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing;  or (3) the Government appeals the sentence.   Absent those exceptions, Defendant explicitly and irrevocably instructs Defendant's attorney not to file an appeal.

Cerma initialed each page of the agreement and signed the plea agreement, including the certification that (1) the plea agreement had been translated to him, and that he read, reviewed, and fully understood its terms; and (2) he stipulated to the factual basis in the plea agreement and it was "true and accurate in every respect." Likewise, Cerma's counsel signed the certification that he had "reviewed each and every part of [the] agreement with [Cerma]"

---

[1] In exchange for the plea, the government agreed to dismiss Count 1.

and he "believe[d] that [Cerma] fully and completely underst[ood] it."

At the change-of-plea hearing, the district court noted that Cerma was a citizen of Albania, and his native language was Albanian. Nevertheless, the district court explained that it understood that Cerma was "fluent in Spanish," and Cerma stated, "Yes. I understand it correctly." The court explained that it had tried to find an Albanian interpreter, but it had been unsuccessful. Cerma confirmed that his "lawyer [told him] that." The district court asked whether Cerma was able to understand the court's questions via the Spanish interpreter, and Cerma stated that he understood "[p]erfectly."

Satisfied by Cerma's responses, the district court proceeded with the plea colloquy.[2] The district court explained that Cerma was "notified of the charges against [him]" at the prior arraignment, and Cerma agreed and affirmed that he wished to enter a plea of guilty to a lesser included offense of Count 2 consistent with the plea agreement. The court asked whether Cerma had enough time to speak with his attorney about his decision, to which Cerma responded that he had. Cerma affirmed that he understood the difference between pleading guilty and not guilty, his related rights, and stated that he met with his lawyer at least seven times to discuss his case. In response to certain questions regarding his rights, Cerma stated multiple times that his

[2] As part of the plea colloquy, Cerma later again affirmed that he understood what was being said via the Spanish interpreter.

lawyer had "explained everything to [him]," and he stated that he did not have any questions about those rights.  Cerma confirmed that his lawyer reviewed the case with him "various times," and he was satisfied with the representation.  When asked whether he had any complaints about his representation, Cerma stated, "No.  On the contrary."  The district court explained the sentencing process, the role of the Sentencing Guidelines in that process, and that Cerma faced a maximum sentence of 20 years' imprisonment.  And Cerma confirmed that he understood and that no one had made him any promises or guarantees regarding his sentence.  The district court explained that, upon pleading guilty, Cerma would have a felony conviction, and Cerma immediately asked, "What is a felony?"  The district court then explained what a felony was, and the related effect that a felony conviction would have on Cerma's civil rights.  Cerma expressly stated that he understood and that he did not have any questions.

Next, Cerma confirmed that he reviewed the plea agreement with his counsel, that he had "the assistance of an interpreter in understanding [it]," and that he understood its terms. He further confirmed that he understood that by initialing and signing the agreement he "agree[d] to be bound by all of its terms and agree[d] that all the facts contained in it are true and . . . accurate."  Cerma then affirmed that he initialed each page in confirmation that he "had read each page and that [he] agreed with each page."  With regard to the elements and the factual basis listed in the plea agreement, Cerma again expressly affirmed that the factual basis set forth in the agreement was "true

and . . . accurate." Cerma then confirmed that he had signed the agreement. Cerma's counsel similarly confirmed his signature on the agreement and that he had reviewed the agreement with Cerma and answered all of Cerma's questions. Finally, the court asked whether Cerma understood that the appeal waiver in the plea agreement meant that he gave up his right to appeal and could only appeal if the government appealed or if the court sentenced Cerma above the guidelines range or statutory maximum, to which Cerma responded that he understood. Cerma confirmed that he was pleading guilty of his own free will because he was in fact guilty. Accordingly, finding Cerma competent and that he understood the charge and that a factual basis supported the plea, the district court concluded his guilty plea was knowing and voluntary.

Prior to sentencing, the United States Probation Office prepared a presentence investigation report ("PSI"). During his interview with the probation office, Cerma "explained that" he was "fluent in Albanian, first, and Spanish, second" with "limited fluency in English." Although he was from Albania, he had "relocated to Colombia in 2006," and lived there until his extradition in this case. He had worked "as a painter and sales clerk" in Colombia. The probation office recommended a four-level guidelines enhancement because Cerma "was an organizer or leader" in the conspiracy, pursuant to U.S.S.G. § 3B1.1(a). His advisory guidelines range was the statutory maximum of 20 years' imprisonment. Cerma objected to the four-level enhancement, but he did not object to any of the personal background

information, including the statement that he spoke Spanish fluently.

At the sentencing hearing, the government called two witnesses who provided testimony in support of the organizer or leader sentencing enhancement. Cerma then testified in Spanish as to his role in the conspiracy. Following the testimony, the district court overruled his objection to the enhancement, concluding that the factual basis in the plea agreement and his testimony established that he was an organizer and leader of the conspiracy. The parties then made arguments as to the appropriate sentence, and the district court sentenced Cerma to the statutory maximum of 240 months' imprisonment to be followed by three years' supervised release. This appeal followed.

## II.    Discussion

Cerma argues that the district court (1) plainly erred in finding his plea knowing and voluntary when the court failed to provide him with an Albanian translator and failed to ensure that he understood the nature of the charges against him; and (2) erred in imposing a four-level guidelines enhancement for his leadership role in the offense. The government, in turn, argues that the guilty plea was valid and that we should dismiss Cerma's sentencing claim based on the sentence-appeal waiver in the plea agreement. We first address the validity of Cerma's plea and then the sentence-appeal waiver.

### A. Validity of the guilty plea

Cerma argues that his guilty plea was not knowing and voluntary because the court (1) did not provide him with an Albanian translator and it "remains unknown whether [his] comprehension of Spanish extends beyond a basic or conversational level"; and (2) failed to ensure that he understood the nature of the charge against him.

"When, as here, a defendant fails to object during his plea colloquy, we review the district court's determination that his plea was knowing and voluntary only for plain error." *United States v. Edwards*, 142 F.4th 1270, 1276 (11th Cir.), *cert. denied*, 2025 WL 3507078 (U.S. Dec. 8, 2025). Plain error occurs where: "(1) there was an error, (2) the error was plain, and (3) the error affect[ed] [the defendant's] substantial rights." *Id.* (quotations omitted). "An error about the voluntariness of a plea affects a defendant's 'substantial rights' if he shows a reasonable probability that the error influenced his decision to plead. *Id.* (quotations omitted). "If all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quotations omitted).

Before accepting a guilty plea, Federal Rule of Criminal Procedure 11 requires that a district court address a defendant personally in open court, inform the defendant of, among other things, the nature of each charge to which the defendant is

pleading, and determine that the defendant's plea is knowing, voluntary, and supported by an adequate factual basis. Fed. R. Crim. P. 11(b)(1)-(3). "These procedures are designed to address the three core objectives necessary for a knowing and voluntary guilty plea: (1) that the defendant enters his plea free from coercion, (2) that he understands the nature of the charges, and (3) that he understands the consequences of his plea." *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018) (quotations omitted). "There is no rigid formula or mechanical rule for determining whether the district court adequately informed the defendant of the nature of the charges." *Id.* (quotations omitted). And "Rule 11 does not specify that a district court must list the elements of an offense." *Id.* Thus, "what constitutes an adequate plea colloquy varies from case to case depending on the complexity of the charges and the defendant's intelligence and sophistication." *Id.* Generally, a reading of the indictment and a detailed factual proffer will put the defendant on notice of the nature of the charges against him. *See id.* at 1239.

Additionally, the trial court must "inquire as to the need for an interpreter when a defendant has difficulty with English." *United States v. Edouard*, 485 F.3d 1324, 1337 (11th Cir. 2007) (quotation omitted). A plea may be "neither informed nor knowing . . . if the defendant did not speak English and he was not afforded competent translation services for both the plea agreement itself and the Rule 11 hearing." *United States v. Bushert*, 997 F.2d 1343, 1350 n.16 (11th Cir. 1993). In determining whether there was a Rule 11 violation that affected the defendant's

substantial rights, we "may consult the whole record." *United States v. Vonn*, 535 U.S. 55, 59 (2002). Finally, "[t]here is a strong presumption that the statements made during the [plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

Here, Cerma failed to show that the district court committed plain error in accepting his guilty plea. Although he is a native Albanian and requested an Albanian translator, the court could not locate one. However, Cerma averred both at his arraignment and at the change-of-plea hearing that he spoke and understood Spanish fluently; therefore, the court provided him with a Spanish interpreter throughout the district court proceedings. There is a "strong presumption" that his assertion that he understood Spanish was true. *Id.* Furthermore, we note that Cerma disclosed in his interview with the probation office that he spoke Spanish fluently. And this contention is corroborated by (1) the fact that Cerma lived and worked in Colombia for many years, where the primary language spoken is Spanish, (2) the recorded calls between the defendants were in Spanish, and (3) Cerma testified without any issue in Spanish at the sentencing hearing. Moreover, at no point during the district court proceedings did Cerma express any confusion or inability to understand. Rather, he responded appropriately to questions and was engaged in the plea colloquy, which confirms that he was able to understand the proceedings with the assistance of the Spanish interpreter. Accordingly, in light of this record, we are not persuaded that the lack of an Albanian interpreter affected Cerma's

substantial rights or otherwise affected the validity of his guilty plea.

The record also confirms that Cerma understood the nature of the charge against him. Even though Cerma waived a reading of the indictment, the district court summarized the charges at the arraignment. Although the district court did not expressly review the elements of the offense as part of the plea colloquy, Cerma's plea agreement expressly listed the elements of Count 2 and contained a detailed factual basis. Cerma signed each page of the agreement, including the certification that (A) the plea agreement had been translated to him, and that he read, reviewed, and fully understood its terms; and (B) he stipulated to the factual basis in the plea agreement and it was "true and accurate in every respect." And he again confirmed this information at the change-of-plea hearing. He also agreed that he had been "notified of the charges against [him]" at the prior arraignment and that he met with his lawyer at least seven times to discuss his case. Thus, the record as a whole demonstrates that Cerma clearly understood the nature of the charge against him, and that the plea colloquy was thorough and addressed the core concerns of Rule 11. *See Presendieu*, 880 F.3d at 1238–39. Consequently, there was no error, much less plain error, and we conclude that Cerma's guilty plea was knowing and voluntary.

## B. *Validity of the appeal waiver*

Cerma argues that the district court erred in imposing a four-level sentencing enhancement for being a leader in the

conspiracy. The government argues that this claim is barred by the sentence-appeal waiver in his plea agreement. We agree with the government.

"We review the validity of a sentence appeal waiver de novo." *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). We enforce appeal waivers that are made knowingly and voluntarily. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006); *Bushert*, 997 F.2d at 1350–51. To demonstrate that a defendant made the waiver knowingly and voluntarily, the government must show that either (1) the district court specifically questioned the defendant about the waiver during the plea colloquy; or (2) the record makes clear "that the defendant otherwise understood the full significance of the waiver." *Bushert*, 997 F.2d at 1351.

The record establishes that Cerma's sentence-appeal waiver was made knowingly and voluntarily. Cerma initialed each page of the plea agreement, signed the agreement, and confirmed during the plea colloquy that he reviewed and understood the agreement, including the terms of the appeal waiver. The district court also orally reviewed the terms of the sentence-appeal waiver with Cerma during the plea colloquy, and Cerma stated that he understood. Thus, the appeal waiver is valid, enforceable, and forecloses Cerma's sentencing challenge because it does not fall within the narrow exceptions to the waiver. *See United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001) (enforcing an appeal waiver where "the waiver provision was referenced during [the

defendant's] . . . plea colloquy and [the defendant] agreed that she understood the provision and that she entered into it freely and voluntarily"). Accordingly, we grant the government's motion to dismiss the sentencing claim.

**AFFIRMED IN PART and DISMISSED IN PART.**